136 F.3d 1345
 40 Fed.R.Serv.3d 255, 98 Cal. Daily Op. Serv. 1402,
98 Daily Journal D.A.R. 1959
 Herbert GULLIFORD, Plaintiff-Appellant,
v.
PIERCE COUNTY, a municipality and governmental subdivision
of the State of Washington; John Shields, Sheriff of Pierce
County; Paul Thrash, individually and as Pierce County
Deputy Sheriff; Terrill Larson, individually and as Pierce
County Deputy Sheriff; P. Donnelly, individually, and as
Pierce County Deputy Sheriff, Defendants-Appellees.
 No. 96-35614.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 7, 1997.
Decided Feb. 27, 1998.
 
 Joel Feldman, Lakewood, WA, for plaintiff-appellant.
 Daniel Hamilton, Tacoma, WA, for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington; Robert J. Bryan, District Judge, Presiding. D.C. No. CV-94-05658-RJB.
 Before: FLETCHER and O'SCANNLAIN, Circuit Judges, and SCHWARZER,* District Judge.
 Opinion by Judge FLETCHER; Partial Concurrence and Partial Dissent by Judge O'SCANNLAIN.
 FLETCHER, Circuit Judge:
 
 
 1
 Herbert Gulliford appeals the judgment entered following a jury trial in his 42 U.S.C. § 1983 action against Pierce County and various law enforcement officials alleging that his constitutional rights were violated when he was arrested for obstructing a public servant and resisting arrest. Gulliford contends that the district court erred in its instructions to the jury regarding his wrongful arrest and excessive force claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for a new trial.
 
 I.
 
 2
 On the evening of September 6, 1992, a group of individuals were gathered around a fire on the north beach of Herron Island, a small privately owned island located just within the borders of Pierce County, Washington, west of Key Peninsula. At about 9:20 p.m. that night, the Pierce County Sheriff's Department ("PCSD") received a call that someone in the environs of the group had threatened a woman's family. About two hours later, the PCSD received a report that "J.D.", a member of the group gathered on the beach, had threatened a firefighter who attempted to extinguish the group's fire. In response, the three named deputy sheriffs, Thrash, Larson and Donnelly, were dispatched to the island to arrest J.D. and extinguish the fire.
 
 
 3
 Upon arriving on the island, the deputies were informed that J.D. had gone home. Deputy Thrash told the group, "This party is over, people," but none of the members left the beach. In response to Deputy Thrash's next statement that "I'm tired of this. This is a waste of government ...," Gulliford replied, "Then why don't you hop on the ferry, hop on the ferry and go back." Deputy Thrash then maneuvered through the crowd, grabbed Gulliford from behind, and placed him under arrest for obstructing a public servant in violation of Wash. Rev.Code. § 9A.76.020.[1]
 
 
 4
 At this point, Gulliford intentionally fell to a sitting position and refused to comply with orders to stand and put his hands behind his back. The deputies grabbed Gulliford's arms, put him in a "hair hold," and placed a knee in his back. Although Gulliford did not kick out at or otherwise assault the officers, he continued passively to resist arrest. Deputies Larson and Donnelly then sprayed pepper spray in Gulliford's face. The deputies were eventually able to get one of Gulliford's wrists in handcuffs, and, after a second spraying in the face with pepper spray, Gulliford ceased resisting. Gulliford was additionally cited for resisting arrest pursuant to Wash. Rev.Code § 9A.76.040.[2]
 
 
 5
 Gulliford was taken to the Pierce County Jail and held there until he posted bond. The deputies never claimed that they thought that Gulliford was "J.D.", and no charges were ever filed against Gulliford. Gulliford contends that he suffered permanent injuries as a result of the officers' use of force in effecting the arrest.
 
 
 6
 Claiming that he was wrongfully arrested and that the deputies used excessive force in violation of his First, Fourth and Fourteenth Amendment rights, Gulliford filed this § 1983 action against Pierce County, Pierce County Sheriff John Shields, and, in their individual as well as official capacities, the three deputies, Thrash, Larson and Donnelly. The claims against Pierce County, however, were dismissed by stipulation of the parties on October 30, 1995.[3]
 
 
 7
 The case was tried for three weeks before an eight person jury, although the wrongful arrest claims as to Larson and Donnelly were dismissed on defendant's motion for a directed verdict and were never submitted to the jury. The jury returned verdicts for Deputy Thrash on the wrongful arrest claim and for all defendants on the excessive force claim.
 
 II.
 
 8
 Gulliford contends that two of the instructions given to the jury were erroneous. "Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." Chuman v. Wright, 76 F.3d 292, 294 (9th Cir.1996). When the alleged error is in the formulation of the instructions, the instructions are to be considered as a whole and an abuse of discretion standard is applied to determine if they are misleading or inadequate. Masson v. New Yorker Magazine, Inc., 85 F.3d 1394, 1397 (9th Cir.1996). However, when the claim is that the trial court misstated the elements that must be proved at trial, the reviewing court must view the issue as one of law and review the instruction de novo. Fireman's Fund Ins. Cos. v. Alaskan Pride Partnership, 106 F.3d 1465, 1469 (9th Cir.1997).
 
 A.
 
 9
 Jury Instruction Number 15 stated in pertinent part:
 
 
 10
 The First Amendment protects the right of citizens to verbally oppose and/or challenge police action without risking arrest so long as that challenge does not knowingly hinder, delay, or obstruct any public servant in the discharge of the public servant's official powers or duties.
 
 
 11
 On appeal, Gulliford claims that his arrest for Obstructing a Public Servant was without probable cause. He contends that Jury Instruction Number 15 does not state a crime because verbal protests or challenges to the police are permitted, even if they knowingly hinder, delay or obstruct the police. To be criminal, the words must be fighting words. He makes the further point that § 9A.76.020, which prohibits hindering, delaying or obstructing a public servant, criminalizes conduct only, not words. He is correct.
 
 
 12
 As a preliminary matter, Pierce County argues that Gulliford is precluded from raising this issue on appeal because he failed to object properly at trial. Specifically, Pierce County contends that the record of Gulliford's exceptions to Jury Instruction Number 15 "is devoid of any mention of the First Amendment's claimed effect on probable cause...."[4]
 
 
 13
 Federal Rule of Civil Procedure 51 provides that "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." It is the responsibility of the litigants to ensure compliance with FRCP 51, and we have generally interpreted that rule "strictly." McGonigle v. Combs, 968 F.2d 810, 823 (9th Cir.), cert. dismissed, 506 U.S. 948, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992). However, we have recognized "a limited exception" to the strict interpretation of FRCP 51: " 'Where the district court is aware of the party's concerns with an instruction, and further objection would be unavailing, we will not require a futile formal objection.' " Id. (citation omitted). Specifically, we have held that such an objection is a pointless formality " 'when (1) throughout the trial the party argued the disputed matter with the court, (2) it is clear from the record that the court knew the party's grounds for disagreement with the instruction, and (3) the party offered an alternative instruction.' " Glover v. BIC Corp., 6 F.3d 1318, 1326 (9th Cir.1993) (quoting United States v. Payne, 944 F.2d 1458, 1464 (9th Cir.1991), cert. denied, 503 U.S. 975, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992)).
 
 
 14
 Gulliford meets the requirements of the "pointless formality" test. The instruction he proposed (No. 31) stated:
 
 
 15
 Defendants claim that they had probable cause to arrest plaintiff for obstructing a police officer in the conduct of his lawful duties. The First Amendment protects the right of citizens to verbally opposed and/or challenge police action so long as that challenge does not involve a threat or fighting words.
 
 
 16
 * * * * * *City of Houston v. Hill, 482 U.S. 451, 462, 107 S.Ct. 2502, 2510, 96 L.Ed.2d 398 (1987).
 
 
 17
 As in Glover v. BIC Corp., Gulliford's proposed instruction was an "accurate statement[ ] of the law which should have brought to the court's attention the failure of the general charge to adequately address the issue of" probable cause. 6 F.3d at 1327. In Glover, we held that such a proposed instruction was sufficient despite the party's failure to object to instructions as given. Id. Here, in contrast to Glover, not only did Gulliford propose an alternative jury instruction, he also objected in open court to Jury Instruction Number 15, albeit in less specific terms, and the parties concede that additional discussions regarding the jury instructions occurred off the record in chambers.[5] We are thus satisfied that the district court knew of Gulliford's grounds for disagreement, and that, on the instant record, the "proposed [probable cause] instruction[ ] will serve as an objection to the instructions given the jury." Id.; cf. United States v. Payne, 944 F.2d 1458, 1463-64 (9th Cir.1991), cert. denied, 503 U.S. 975, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992) (specific objection not a "pointless formality" where it was clear from the record that failure to give a presumption of innocence instruction was due to simple oversight and counsel failed to alert the court to the omission when it pointedly asked whether there were any objections to the instructions read to the jury). As a result, Gulliford is not precluded from raising on appeal his objection to Jury Instruction Number 15.[6]
 
 
 18
 The Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is " 'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest.' " City of Houston, Texas v. Hill, 482 U.S. 451, 461-63, 107 S.Ct. 2502, 2509-11, 96 L.Ed.2d 398 (1987) (quoting Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949)); see also Lewis v. City of New Orleans, 415 U.S. 130, 132-134, 94 S.Ct. 970, 972-73, 39 L.Ed.2d 214 (1974).
 
 
 19
 In Hill, a case with facts substantially similar to those before us, the appellee shouted at police officers who had approached his friend to "pick on somebody your own size." Id. at 454, 107 S.Ct. at 2505. Hill was arrested under a city ordinance that prohibited "oppos[ing], molest[ing], abus[ing] or interrupt[ing] any policeman in the execution of his duty." Id. at 455, 107 S.Ct. at 2506. Although Hill was acquitted, he brought an action seeking to strike the ordinance as unconstitutional on its face. Id. The Supreme Court agreed, emphasizing that "[t]he Constitution does not allow such speech to be made a crime," and that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Id. at 462-63, 107 S.Ct. at 2510.
 
 
 20
 Similarly, in Lewis v. City of New Orleans, as later recounted in Hill, the appellant yelled obscenities at an officer who had asked appellant's husband to produce his driver's license. Id. at 461, 107 S.Ct. at 2509. Lewis was convicted under a municipal ordinance that made it a crime "for any person wantonly to curse or revile or to use obscene or opprobious language toward or with reference to any member of the city police while in the actual performance of his duty." Lewis, 415 U.S. at 132, 94 S.Ct. at 972. The Supreme Court vacated the conviction and invalidated the ordinance as facially overbroad, explaining that the ordinance was not limited in scope to "fighting words" that " 'by their very utterance inflict injury or tend to incite an immediate breach of the peace.' " Id. at 133, 94 S.Ct. at 972 (quoting Gooding v. Wilson, 405 U.S. 518, 525, 92 S.Ct. 1103, 1107, 31 L.Ed.2d 408 (1972)).
 
 
 21
 Relying, inter alia, on the Supreme Court's decision in Hill, we ruled in Mackinney v. Nielsen that expressive conduct such as writing with chalk on the sidewalk does not itself create probable cause for arrest, and that verbally protesting an officer's order to stop writing is protected by the First Amendment. See 69 F.3d 1002, 1007-08 (9th Cir.1995). The decision in Mackinney also relied on Duran v. City of Douglas, in which we emphasized that "criticism of the police is not a crime," and that "while police, no less than anyone else, may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful but protected by the First Amendment." 904 F.2d 1372, 1377, 1378 (9th Cir.1990).
 
 
 22
 The facts before us are indistinguishable from those in Hill and its progeny. If anything, Gulliford's suggestion that Deputy Thrash "hop on the ferry"[7] is less provocative than the "opprobious language" found in those cases. Jury Instruction Number 15 misstates the law or is at best misleading since it does not state that under the First Amendment an individual cannot be arrested for mere speech unless the speech constitutes "fighting words." See Hill, 482 U.S. at 465-67, 107 S.Ct. at 2511-13; see also Mackinney, 69 F.3d at 1007-08; Duran, 904 F.2d at 1377-78. We agree that Jury Instruction Number 15 was impermissibly misleading, warranting reversal unless the error was harmless.
 
 
 23
 In a civil case, "[i]f a jury instruction is erroneous, we will reverse the judgment unless the error is more probably than not harmless." Chuman v. Wright, 76 F.3d 292, 294 (9th Cir.1996). Here, the jury more probably than not found that Deputy Thrash had probable cause to arrest Gulliford based on his words alone because that is all that Gulliford did-he spoke. As a matter of law, the words spoken were not "fighting words." Accordingly, we reverse and remand for a new trial on this claim.
 
 B.
 Jury Instruction Number 14 stated:
 
 24
 An individual has a limited right to offer reasonable resistance to an arrest made without probable cause, but only if the arrest is the product of the officer's bad faith, provocative conduct, or personal frolic. In such a case, the amount of force used to resist an unlawful arrest must be reasonable and proportioned to the injury attempted upon the arrestee.
 
 
 25
 On appeal, Gulliford argues that this jury instruction was erroneously based on federal law rather than Washington State law.
 
 
 26
 The objection is not well taken. We need not go beyond the observation that the Washington law on this point is substantially indistinguishable from the federal law. The Washington state case quoted by Gulliford states that a "person being illegally arrested may use reasonable and proportional force to resist the arrest." State v. McCrorey, 70 Wash.App. 103, 851 P.2d 1234 (1993) (citing State v. Hornaday, 105 Wash.2d 120, 713 P.2d 71 (1986)). This "reasonable and proportional" standard is to all appearances identical to the one found in Jury Instruction 14.
 
 
 27
 Accordingly, the district court did not err in instructing the jury under federal rather than Washington State law with regard to Gulliford's claim that the arresting officers used excessive force.
 
 III.
 
 28
 Pierce County argues on appeal that Deputy Thrash is entitled to qualified immunity from Gulliford's wrongful arrest claim and that all of the deputies are entitled to qualified immunity from Gulliford's excessive force claim. However, Pierce County neglects to explain why it did not cross-appeal on this issue from the district court's denial of its motion seeking qualified immunity.
 
 
 29
 As we recently reiterated, "[a]n appellee who fails to file a cross-appeal cannot attack a judgment with a view toward enlarging its own rights." Spurlock v. FBI, 69 F.3d 1010, 1018 (9th Cir.1995) (citing Turpen v. City of Corvallis, 26 F.3d 978, 980 (9th Cir.), cert. denied, 513 U.S. 963, 115 S.Ct. 426, 130 L.Ed.2d 339 (1994)).
 
 
 30
 Moreover, even if Pierce County had cross-appealed, it does not appear that the district court erred in denying the officials qualified immunity. As we explained in Mackinney v. Nielsen, "the Supreme Court instructed courts ruling on qualified immunity to examine whether the 'contours of the right' at stake in the action are sufficiently clear so that a reasonable official could understand that he or she is violating the right." 69 F.3d 1002, 1006-07 (9th Cir.1995). We ultimately concluded in that case that
 
 
 31
 Police officers have a difficult job, and they deserve the respect of their community. But they in turn must respect the right of individuals in that community to question their government and the role of the police. A reasonable officer should have known that Mackinney was simply exercising that right.
 
 
 32
 Id. at 1007.
 
 
 33
 AFFIRMED in part, REVERSED in part, and REMANDED for a new trial. Appellee to bear costs.
 
 
 34
 O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part.
 
 
 35
 I would affirm the judgment of the district court. Regrettably, I cannot join Section II.A's discussion of the jury instruction on verbal opposition to police action, which, in my view, threatens "[t]his court['s] ... reputation as the strictest enforcer of Rule 51," Hammer v. Gross, 932 F.2d 842, 847 (9th Cir.1991), and creates a direct intra-circuit conflict with Grosvenor Properties Ltd. v. Southmark Corp., 896 F.2d 1149 (9th Cir.1990). Therefore, I respectfully dissent and would not reach the question of qualified immunity, which the majority discusses in Part III.
 
 
 36
 * Federal Rule of Civil Procedure 51 states:
 
 
 37
 No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.
 
 
 38
 Fed.R.Civ.P. 51 (emphasis added). Our court has "interpreted this rule strictly and ha[s] stated that, '[i]n a civil case, we may not review a jury instruction in the absence of a proper objection.' " McGonigle v. Combs, 968 F.2d 810, 823 (9th Cir.1992) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 638 (9th Cir.1991)); see also 9 C. Wright & A. Miller, Federal Practice and Procedure § 2558, at 674 (1971) ("[T]he Ninth Circuit stands alone in reading Civil Rule 51 literally and denying that there is any power to reverse for plain error in an unobjected-to instruction in a civil case.") The party objecting to the instruction must bring "into focus the precise nature of the alleged error in the district court's instruction." McGonigle, 968 F.2d at 824 (emphasis added).
 
 
 39
 Gulliford now argues that he was arrested for obstructing a police officer without probable cause in violation of the Fourth Amendment. He does not claim on appeal that his First Amendment right verbally to hinder, delay, or obstruct the police was also violated.
 
 
 40
 Gulliford correctly argues before this court that jury instruction 15[1] was flawed because it failed to inform the jury that the police lacked probable cause to arrest him for speech that "knowingly hinder[ed], delay[ed], or obstruct[ed]" the police but did not include "fighting words [ ]or ... obscene or opprobrious language." Houston v. Hill, 482 U.S. 451, 461, 107 S.Ct. 2502, 2509, 96 L.Ed.2d 398 (1987). Gulliford's objection to jury instruction 15 at trial rested on an entirely different ground. Gulliford's argument was as follows:
 
 
 41
 [The instruction] does not include a claim for a specific First Amendment violation, and as we indicated in our trial brief and in discussions previously with the court, we believe that both the First Amendment and the Fourth Amendment are implicated and that a violation of either would give rise to a cause of action.
 
 
 42
 In other words, Gulliford argued at trial that instruction 15 did not separately address his (now abandoned) claim that his First Amendment rights had been violated as well. Gulliford's (perhaps incorrect) argument was that the instruction was exclusively concerned with his Fourth Amendment claim--not that the instruction misstated the elements of that claim.
 
 
 43
 Of course, the contours of Gulliford's Fourth Amendment claim are shaped both by Wash. Rev.Code § 9A.76.020--the Washington statute that prohibits obstruction of law enforcement officers--and by the First Amendment. Section 9A.76.020 provides: "Every person who ... (3) shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties; shall be guilty of a misdemeanor." Meanwhile, the First Amendment gives individuals the right to verbally obstruct public servants as long as they do not use "fighting words [ ]or ... obscene or opprobrious language." Houston v. Hill, 482 U.S. 451, 462, 107 S.Ct. 2502, 2509, 96 L.Ed.2d 398 (1987). Viewed in conjunction with Wash. Rev.Code § 9A.76.020, the First Amendment helps to define Gulliford's right under the Fourth Amendment not to be arrested for obstructing the police without probable cause.
 
 
 44
 However, Gulliford's objection at trial to jury instruction 15 had nothing to do with his rights under the Fourth Amendment. Rather, Gulliford wanted the district court to instruct the jury separately regarding an alleged violation of his First Amendment right to verbally obstruct police officers. Because Gulliford failed to "stat[e] distinctly the matter objected to and the grounds of [his] objection [at trial]," Fed.R.Civ.P. 51 (emphasis added), he is precluded from raising his Fourth Amendment argument on appeal.
 
 II
 
 45
 The majority invokes the "pointless formality" exception to Rule 51. As we explained in United States v. Payne, 944 F.2d 1458 (9th Cir.1991), "an objection may be a 'pointless formality' when (1) throughout the trial the party argued the disputed matter with the court, (2) it is clear from the record that the court knew the party's grounds for disagreement with the instruction, and (3) the party offered an alternative instruction." Id. at 1464.
 
 
 46
 It is undisputed by the parties that Gulliford offered an alternative instruction. Gulliford has failed to demonstrate, however, either that "throughout the trial [he] argued the disputed matter with the court," or that "it is clear from the record that the court knew [Gulliford's] grounds for disagreement with the instruction." Id. (emphasis added). Apart from noting that Gulliford submitted an alternative instruction (thereby satisfying only the third element of the pointless formality test), the majority does not point to anything in the trial record to support its conclusion that the pointless formality exception to Rule 51 applies here.
 
 
 47
 In Grosvenor Properties Ltd. v. Southmark Corp., 896 F.2d 1149 (9th Cir.1990), the defendants submitted an alternative jury instruction that was rejected by the district court. See id. at 1152. At a sidebar conference called to consider the instructions, the defendants stated that their proposed instruction had not been given. See id. The district court responded that it had rejected the instruction and that it was unnecessary for counsel to repeat previously submitted instructions or objections. See id. We held that such a "sequence of events is not sufficient to constitute a sufficient objection to the instructions that were given, as Rule 51 is applied in this circuit." Id. If the defendants in Grosvenor did not succeed in preserving their objection despite complaining that their proposed instruction had not been given, then certainly Gulliford, who did nothing to call attention to the district court's rejection of his instruction, failed to preserve his objection.
 
 
 48
 In an attempt to distinguish Grosvenor, the majority relies upon a sentence from that opinion. See Majority Opinion at 1621 n. 6 ("However, in contrast to the instant case, the alternative jury instruction in Grosvenor failed 'to state distinctly the matter objected to and the ground of the objection as required by Rule 51.' ") (quoting Grosvenor, 896 F.2d at 1153). The relevant passage in Grosvenor, however, states, in full:
 
 
 49
 Southmark argues that it made the required specific objection to the instruction that failed to state that termination of the joint venture would end fiduciary duty, and that it submitted alternative theories of liability to the jury by way of special verdict questions. It contends that it did so by its submission of proposed jury instruction 22. In addition, at a sidebar conference called to consider corrections and additions to the instructions, Southmark's counsel stated that instruction 22 had not been given and the court responded that it had rejected that instruction. At that same conference the court noted that it was not necessary for counsel to repeat previously submitted instructions or objections.
 
 
 50
 However, this sequence of events is not sufficient to constitute a sufficient objection to the instructions that were given, as Rule 51 is applied in this circuit. This court has held that remarks made by counsel in chambers, discussion of law in pretrial memoranda and mere submission of proposed instructions did not clearly show that the issue was focused before the court.
 
 
 51
 In addition, an examination of proposed instruction 22 suggests that it was not sufficient to state distinctly the matter objected to and the ground of the objection as required by Rule 51.
 
 
 52
 Id. at 1152-53 (internal citations omitted). As the above passage demonstrates, our holding in Grosvenor, that a "sequence of events" which includes the submission of an alternative jury instruction does not "constitute a sufficient objection to the instructions that were given," did not turn on whether that alternative instruction "state[d] distinctly the matter objected to and the ground of the objection." Id. Although we observed ("addition[ally]") in Grosvenor that the alternative instruction was unclear, id. at 1153 (citing Brown v. AVEMCO Inv. Corp., 603 F.2d 1367, 1371 (9th Cir.1979)), the clarity of the alternative instruction was irrelevant to Grosvenor's analysis of the "sufficien[cy]" of the relevant "sequence of events." Id. at 1152. Far from distinguishing Grosvenor, the majority's discussion of that case demonstrates why the majority opinion is in direct conflict with it.
 
 
 53
 I respectfully dissent.
 
 
 
 *
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Wash. Rev.Code § 9A.76.020 provides in pertinent part: "Every person who ... (3) shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties; shall be guilty of a misdemeanor."
 
 
 [2]
 Wash. Rev.Code § 9A.76.040 provides: "(1) A person is guilty of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from lawfully arresting him. (2) Resisting arrest is a misdemeanor."
 
 
 [3]
 The references in this opinion to arguments by "Pierce County" refer to Pierce County Deputy Prosecuting Attorney Daniel R. Hamilton, who argued the instant appeal on behalf of the Pierce County Deputy Sheriffs
 
 
 [4]
 Pierce County asserts that the entirety of Gulliford's argument to the District Court regarding Jury Instruction Number 15 was as follows:
 It does not include a claim for specific First Amendment violation, and as we indicated in our trial brief and in discussion previously with the court, we believe that both the First Amendment and the Fourth Amendment are implicated and that a violation of either would give rise to a cause of action.
 
 
 [5]
 Pierce County cites Benigni v. City of Hemet, 879 F.2d 473, 475-76 (9th Cir.1988), for the proposition that, notwithstanding Gulliford's proposed alternative jury instruction, his objection was not properly preserved because "the trial court was not made aware of any specific concern with the proposed instructions." However, unlike Gulliford, the litigant in Benigni made no oral objection or argument whatsoever at trial. Id. at 476. Pierce County concedes that Gulliford by contrast did make an oral objection to Jury Instruction Number 15 specifically regarding the First Amendment. Although the precise articulation of Gulliford's First Amendment argument was not as artfully presented in his oral objection as it was in his alternative jury instruction, it was sufficient to give the court "an opportunity to modify the instruction and incorporate the elements of the ... proposed instructions." Id
 
 
 [6]
 Judge O'Scannlain's partial dissent suggests that this case is controlled by Grosvenor Properties Ltd. v. Southmark Corp., 896 F.2d 1149, 1152-53 (9th Cir.1990), in which we held that Southmark failed to comply with the requirements of FRCP 51 notwithstanding the fact that Southmark offered an alternative jury instruction. See infra at 1626, 1629-30. However, in contrast to the instant case, the alternative jury instruction in Grosvenor failed "to state distinctly the matter objected to and the ground of the objection as required by Rule 51." 896 F.2d at 1153. Gulliford's proposed jury instruction, on the other hand, precisely articulated the matter objected to and the grounds of the objection, much like the alternative instruction in Brown v. AVEMCO Inv. Corp., 603 F.2d 1367 (9th Cir.1979), cited with approval in Grosvenor, 896 F.2d at 1153. As we noted in Grosvenor, the plaintiff in Brown adequately complied with the requirements of FRCP 51 because his proposed instruction was sufficiently clear to focus the issue for the jury. See id
 
 
 [7]
 Pierce County contends that Gulliford's statement included profanity. However, the testimony of the PCSD deputies is somewhat inconsistent on this point. Deputy Thrash wrote in his report that Gulliford said "Then why don't you get the fuck off the island." Deputy Donnelly wrote in his report that "A person on the far side of the fire said why don't you leave the fuckin[g] island. [Deputy Thrash] walked around the fire and grabbed Mr. Gulliford from behind and pulled him over backwards." Finally, Deputy Larson wrote that "Thrash told them to leave and told them we were tired of coming over to stop these problems, no one moved and a male voice to my right said something to the effect of 'Then get the hell off the island.' Thrash walked over and grabbed the only male around, he had been crouching down between two women when he said it. Thrash told him he was under arrest...." In any event, whether Gulliford may have used profanity does not affect the analysis
 
 
 [1]
 Jury instruction 15 stated:
 The First Amendment protects the right of citizens to verbally oppose and/or challenge police action without risking arrest so long as that challenge does not knowingly hinder, delay, or obstruct any public servant in the discharge of the public servant's official powers or duties.