UNITED STATES of America,
Plaintiff–Appellee,

v.

Nolan L. POOCHA, Defendant–
Appellant.

No. 00–10283.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 2001

Filed Aug. 7, 2001

Quin Denvir, Federal Defender, and Oliver E. Vallejo, Assistant Federal Defender, Fresno, California, for the petitioner-appellant.

Paul L. Seave, U.S. Attorney, and Virna L. Santos, Assistant U.S. Attorney, Sacramento, California, for the respondent-appellee.

Before: REINHARDT, TASHIMA, and BERZON, Circuit Judges.

Opinion by Judge REINHARDT; Concurrence by Judge BERZON; Partial Concurrence and Partial Dissent by Judge TASHIMA

REINHARDT, Circuit Judge:

Nolan Poocha appeals his convictions for disorderly conduct, in violation of 36 C.F.R. § 2.34(a)(2), and failure to obey a lawful order, in violation of 36 C.F.R. § 2.32(a)(2). We reverse the first conviction, but affirm the second.

## BACKGROUND

On the evening of August 29, 1999, two National Park Service rangers attempted to arrest Brian Hadley outside of the Curry Village Lodge in Yosemite National Park. As the rangers struggled with Hadley, a crowd numbering between 30 and 50 gathered. The group of spectators included defendant Nolan Poocha, his girlfriend Randi Salazar, and Ryan Cobble. Two additional officers, Rangers Lober and Ingram, were called to the scene to assist. Ranger Lober testified that when he arrived at the Lodge members of the crowd were expressing hostility toward the officers, making "statements of police brutality, . . . fuck this, fuck that, this is fucked, stuff along those lines." Lober attempted to get the crowd to back away from the

officers who were struggling with Hadley by issuing general orders to the crowd to back up and to disperse.

A small group of eight to ten individuals near Lober was particularly angry and emotional. Lober testified that he made eye contact with one member of this group, Poocha, who was standing approximately five feet away, and "told him, you need to leave, you need to back up, you need to disperse from the area." According to Lober, Poocha's response was "fuck you." Ranger Ingram witnessed this exchange. He testified that Lober told Poocha to disperse, and that Poocha "clench[ed] his fists, st[u]ck out his chest, and yell[ed] 'fuck you.'" Similarly, security supervisor Rivas stated that she observed Poocha "step[ping] up to the ranger after he told him to back off" and yelling at him. The defense witnesses, Cobble and Salazar, offered a different account. According to them, Lober never specifically instructed Poocha to leave, and Poocha exclaimed "that's fucked" as a general comment on the rangers' handling of the situation rather than as a challenge directed at Ranger Lober.

Upon hearing Poocha's outburst, Lober decided that he "needed to start taking out some of the more hostile players." He advanced toward Poocha and told him to leave the area. Randi Salazar, Poocha's girlfriend, placed herself between Lober and Poocha, yelling at the ranger "this is freedom of speech." At this point, Lober decided to back off and not to arrest Poocha "because otherwise I would have gone down in the dirt with either or both of these two subjects, and then we would have compounded an already untenable position." Ranger Ingram then decided to assist Lober in calming the crowd, and, specifically, to talk to Poocha. When Ingram told Poocha that he would arrest him if he did not leave the scene, Poocha voluntarily departed. The rangers did not arrest or issue a citation to Poocha that evening.

The next day, Ranger Lober wrote up a citation charging Poocha with disorderly conduct, in violation of 36 C.F.R. § 2.34. Subsequently, a two-count Information was filed charging Poocha with (1) "us[ing] language in a matter [sic] that was likely to incite an immediate breach of the peace while the Ranger was trying to assist other Rangers in attempting to make an arrest," in violation of 36 C.F.R. § 2.34(a)(2); and (2) intentionally failing to obey a lawful order by a government employee [Ranger Lober] authorized to maintain order during law enforcement actions, in violation of 36 C.F.R. § 2.32(a)(2).

A bench trial was held. At the close of the evidence, the defense moved for a judgment of acquittal, which was denied. The court then issued a written verdict in which the district judge found Poocha guilty as charged in the information of disorderly conduct in violation of 36 C.F.R. § 2.34(a)(2), and of intentionally failing to obey a lawful order in violation of 36 C.F.R. § 2.32(a)(2). Poocha was sentenced to twelve months probation on each count to be served concurrently and ten days in custody in periods of intermittent confinement. He appealed.

## DISCUSSION

*Disorderly Conduct*

■ Poocha was convicted of violating the federal disorderly conduct regulation, 36 C.F.R. § 2.34(a)(2), which provides:

(a) A person commits disorderly conduct when, with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly creating a risk thereof, such person commits any of the following prohibited acts:

. . . . .

(2) Uses language, an utterance, or gesture, or engages in a display or act that is obscene, physically threatening or menacing, or done in a manner that is likely to inflict injury or incite an immediate breach of the peace.

Specifically, he was charged with and found guilty of "us[ing] language in a matter [sic] that was likely to incite an immediate breach of the peace while the Ranger was trying to assist other Rangers attempting to make an arrest" in violation of § 2.34(a)(2).

■ On its face, the "incite an immediate breach of the peace" portion of § 2.34(a)(2) that Poocha was convicted of violating does not criminalize speech protected by the First Amendment. It closely tracks, in part, the words of the historic Supreme Court decision in *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), in which the Court described the type of language that may be legally proscribed by the government—specifically classes of speech "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." The one federal decision construing § 2.34(a)(2) that we have found notes that "[t]he statute is designed to prohibit speech that incites violence, or

'presents a clear and present danger' .... [t]his statute covers what are known as 'fighting words' and 'incitement to riot.'" *United States v. Chung Lee,* 1991 WL 193422, at *2 (E.D.Pa. Sept.20, 1991). Because the regulation proscribes only that speech that stands beyond the constitutional bourn, Poocha's appeal requires us to determine whether the speech of which he was convicted falls within the parameters of the First Amendment, or whether it does not and it is covered by the regulation.

■ The Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is "shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *City of Houston v. Hill,* 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (quotation omitted). The government argues that Poocha's speech is not protected by the First Amendment because it constituted either fighting words or an incitement to riot.[1]

■ To characterize speech as actionable "fighting words," the government must prove that there existed "a likelihood

---

1. The government also argues that Poocha's statement is unprotected because in context it constituted a "true threat" to the officers. *See United States v. Orozco–Santillan,* 903 F.2d 1262, 1265–66 (9th Cir.1990) ("a 'true' threat, where a reasonable person would foresee that the listener will believe that he will be subjected to physical violence upon his person, is unprotected by the First Amendment."). However, Poocha was not charged with engaging in a "physically threatening or menacing" display or act. *See* § 2.34(a)(2). In any event, Poocha's words, even when viewed in the light of his conduct, do not suggest that his speech constituted a threat of violence unprotected by the First Amendment. Under the circumstances, Poocha could reasonably believe that Lober would interpret his

exclamations as yet another expression of criticism from an onlooker rather than a serious expression of intent to harm or assault him.

The government also suggests that Poocha's words could be punished as obscene. However, the Supreme Court made clear in *Cohen v. California* that the use of profanity cannot be classified as obscene unless it is, in some significant way, erotic. *Cohen v. California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (individual wearing jacket bearing "Fuck the Draft" is not obscene expression); *see also Hess v. Indiana,* 414 U.S. 105, 107, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (statement that "We'll take the fucking street later (or again)" at anti-war demonstration cannot be punished as obscene).

that the person addressed would make an immediate violent response." *Gooding v. Wilson,* 405 U.S. 518, 528, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). As the Supreme Court has suggested, the fighting words exception recognized in *Chaplinsky* requires a narrower application in cases involving words addressed to a police officer, "because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" *See Hill,* 482 U.S. at 462, 107 S.Ct. 2502 (citation and internal quotation marks omitted).

The rule requiring narrower application of the fighting words doctrine with respect to words addressed to a police officer is also compelled by "the constitutional shield [that protects] criticism of official conduct." *New York Times Co. v. Sullivan,* 376 U.S. 254, 273, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). "[I]t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions, and this opportunity is to be afforded for 'vigorous advocacy' no less than 'abstract discussion.'" *Id.* at 269, 84 S.Ct. 710. In light of our "profound national commitment to the principle that debate on public issues shall be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials," *id.* at 270, 84 S.Ct. 710, the area of speech unprotected as fighting words is at its narrowest, if indeed it exists at all, with respect to criminal prosecution for speech directed at public officials. *See Garrison v. Louisiana,* 379 U.S. 64, 73–74,

85 S.Ct. 209, 13 L.Ed.2d 125 (1964) (holding that otherwise unprotected speech sometimes must be insulated from liability where the target is a public official "if the freedoms of expression are to have the breathing space that they need to survive") (citation and internal quotation marks omitted).

We have held that language directed at a police officer similar to that used by Poocha is protected by the First Amendment. In *Gulliford v. Pierce County,* 136 F.3d 1345 (9th Cir.1998), police responded to a beach party after they received a complaint that someone had threatened a firefighter who had attempted to extinguish the group's fire. The police told the group to go home, but the crowd did not disperse. In response to the deputy's statement, "I'm tired of this. This is a waste of government ..." Gulliford replied, "Then why don't you get the fuck off the island." *Id.* at 1350.[2] We held that the words spoken by Gulliford did not constitute fighting words. *Id.* Similarly, in *Duran v. City of Douglas, Arizona,* 904 F.2d 1372 (9th Cir.1990), we held that Arizona's disorderly conduct statute did not permit a police officer to arrest an individual who directed a series of expletives and obscene hand gestures at the officer. A police officer ejected Duran from a bar after he threatened the bartender, and Duran left the bar in a car driven by his wife. Soon thereafter, the officer saw Duran making obscene gestures and yelling profanities at him from the car, and arrested him. *Id.* at 1374–75. We held that yelling obscenities at a police officer did not constitute fighting words proscribed by the Arizona disorderly conduct statute,[3]

---

**2.** There was a dispute as to whether Gulliford said "why don't you hop on the ferry and go back" or "why don't you get the fuck off the island." We held that whether Gulliford used the profanity or not did not affect our First Amendment analysis. *See Gulliford,* 136 F.3d at 1350 n. 2.

**3.** The relevant portion of the Arizona statute was aimed explicitly at fighting words, stating that a person commits disorderly conduct if he "[u]ses abusive language or gestures to any person present in a manner likely to provoke

and therefore that the officer had no cause to detain Duran. *Id.* at 1377.

 Just like the individuals in *Gulliford* and *Duran*, Poocha used profanity to express his disapproval of an officer's conduct. Criticism of the police, profane or otherwise, is not a crime. *Hill*, 482 U.S. at 462–63, 107 S.Ct. 2502. Poocha's yelling "fuck you" at Ranger Lober was no more likely to provoke a violent response from the officer than Duran's tirade of obscene comments and gestures. We have repeatedly emphasized that "while police, no less than anyone else, may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment." *Duran*, 904 F.2d at 1378. Poocha's speech is not stripped of its constitutional protection simply because it is accompanied by the aggressive gestures involved—clenching his fists and sticking out his chest.[4] We therefore conclude that Poocha's speech did not constitute fighting words prohibited by § 2.34(a)(2).

Poocha's statement was neither intended to nor likely to incite the crowd at the scene to riot. *See Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Whether Poocha said "fuck you" or "that's fucked," the natural import of his speech was an expression of criticism of the police, not an incitement of the crowd to act. *Cf. Hess v. Indiana*, 414 U.S. 105, 108–09, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (holding that the words "We'll take the fucking street later (or again)," spoken while facing a crowd at an antiwar demonstration while police were attempting to clear the street was not an incitement to violence). The crowd had been shouting obscenities at the police for several minutes without any escalation toward violence prior to Poocha's outburst. The addition of Poocha's voice to the chorus was not directed at or likely to produce imminent lawless action.[5] Thus, although Poocha made his statement in the midst of an emotional crowd that was criticizing the officers, there is no evidence to support a finding that his declaration to the officers—"fuck you" or "that's fucked" constituted an incitement to riot. In fact, the question is not even a close one.

We hold that Poocha's statement constitutes constitutionally protected speech and does not provide a lawful basis for a conviction under § 2.34(a)(2) for using language "in a manner that is likely to inflict injury or incite an immediate breach of the peace." Poocha's unpleasant response to the rangers, tasteless as it may have been, falls squarely within the protection of the First Amendment. As the Supreme Court has noted, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill*, 482 U.S. at 462–63, 107 S.Ct. 2502.

*Failure to Obey a Lawful Order*

 The district judge also found Poocha guilty of "intentionally fail[ing] to obey

---

immediate physical retaliation by such person...." *Id.* at 1377 n. 4.

**4.** Nor do his gestures serve to convert Poocha's First Amendment speech into a "true threat." *See supra* note 1.

**5.** It is not surprising that the crowd's anger did not escalate in response to Poocha's statement, and that no violence or arrests of spec-

tators occurred after Poocha's outburst. The only person who reacted to Poocha's statement was Ranger Lober, who moved toward Poocha and told him to leave the area. In response, Salazar placed herself between the officer and Poocha and started yelling, but neither she nor anyone else became violent. In fact, Poocha and Salazar ultimately left the scene voluntarily without being arrested.

a lawful order of a government employee authorized to maintain order during law enforcement actions, to wit: the defendant, while an arrest was in progress, refused to leave the area when ordered to do so by Ranger Keith Lober." Poocha contends that the government did not present sufficient evidence to sustain this conviction under 36 C.F.R. § 2.32(a)(2).[6]

Poocha argues that there was insufficient evidence to convict because Ranger Lober did not testify to the exact phrasing of his order, and because there was insufficient proof that Poocha heard the order and willfully and intentionally disobeyed it. Lober testified that he made eye contact with Poocha, ordered him to disperse, move back, and leave the area, and that Poocha responded by yelling "fuck you." Lober then closed the distance between Poocha and himself and again "told him to leave," but Poocha refused to depart until after a second ranger also ordered him to do so and threatened him with arrest. Even then, Poocha did not leave until a third person, unknown to the second ranger, came up to Poocha and "had a few words" with him, after which the two individuals apparently retreated.

Although Lober did not testify to the ipsissima verba of his order to Poocha, a reasonable factfinder could conclude from the evidence that he clearly communicated to Poocha that he was directing him to leave the area, and that Poocha intentionally defied that order by standing his ground, shouting an obscenity at the ranger, and refusing to leave until after he was subsequently threatened with arrest by another ranger and persuaded to leave by a friend or acquaintance. Poocha's response to Ranger Lober, though protected by the First Amendment, indicates that he heard and understood Lober's order to

leave and willfully disobeyed it. While the evidence is far from overwhelming, we hold that it is sufficient to support Poocha's conviction for failing to obey a lawful order under 36 C.F.R. § 2.32(a)(2). *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (holding that evidence is sufficient if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

## CONCLUSION

The conviction for disobeying a lawful order in violation of 36 C.F.R. § 2.32(a)(2) is hereby AFFIRMED. The conviction for disorderly conduct in violation of 36 C.F.R. § 2.34(a)(2) is hereby REVERSED and the case is REMANDED with instructions to enter a judgment of acquittal as to that count.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

BERZON, Circuit Judge, concurring:

I join Judge Reinhardt's opinion with the following caveat: To me, it is all-important that the indictment charged Poocha only with "using language in a [manner] that was likely to incite an immediate breach of the peace," not with violating any other provision of the applicable regulation, such as "engag[ing] in a display or act that is … physically threatening." Further, while a reference to "speech" might include expressive conduct and thereby encompass gestures that could be interpreted as physically threatening, "language" does not. So, whatever one thinks about whether or not the evidence would sustain a conclusion that Poocha's clenching of his fists and sticking out his chest

---

**6.** 36 C.F.R § 2.32(a)(2) prohibits "[v]iolating the lawful order of a government employee or agent authorized to maintain order and control public access and movement during … law enforcement actions."

constituted a threat that he would physically attack one of the officers, that is not the question before us. Any such physical threat, if it in fact occurred, would not be protected by the First Amendment, I would agree. But focusing on what Poocha said and the context in which he did so, I agree with Judge Reinhardt that his speech was protected under the First Amendment, as it was addressed to police officers and concerned their conduct.[1]

I note as well, with regard to Judge Tashima's central point, that the speech was directed at the officers, not at anyone else, and there is nothing to indicate that anyone in the crowd other than Poocha's companions even heard what he said. Moreover, Ranger Lober's explanation to Ranger Ingram as to why things were not in control—"things weren't in control. He had been trying to get Mr. Poocha to calm down and leave the scene . . ."—was related only to Poocha, not to the crowd in general. In other words, this case was tried, and could only have been tried, on a "fighting words" theory, not an "incitement to riot" theory. So the focus of Judge Reinhardt's opinion upon the effect of the speech on the officers is quite correct, because there is not substantial evidence to sustain a conclusion that Poocha's language had caused, or was immediately likely to cause, any impact on the behavior of the crowd as a whole.

TASHIMA, Circuit Judge, concurring in part and dissenting in part:

I concur in that part of the majority opinion which affirms the conviction for failure to obey a lawful order, but, for the reasons stated below, I respectfully dissent from that part of the opinion which reverses the conviction for disorderly conduct.

The disorderly conduct count was premised on the use of language "in a manner that is likely to . . . incite an immediate breach of the peace," in violation of 36 C.F.R. § 2.34(a)(2). Defendant Poocha was not charged with or convicted for the use of foul language or calling the park ranger names, as much of the majority's discussion infers. Poocha was convicted of using language that was likely to incite an immediate breach of the peace.

When Ranger Lober arrived at the scene outside of Curry Village Lodge, he observed two officers wrestling with a suspect on the ground. A hostile crowd of as many as 50 people had already gathered at the location. He testified that "the officer's guns [were] exposed and the crowd [was] in very close proximity. So I felt it was necessary to provide them a buffer zone so that someone wouldn't grab a weapon or something along those lines or actively interfere with the officers as they [were] completing their arrest." Poocha was part of an angry and emotional group of eight to 10 individuals close to Lober.

Ranger Ingram arrived at the scene slightly after Lober. After handcuffing another individual from the crowd who was interfering with the officers, Ingram heard yelling coming from Ranger Lober's direction. As he approached Lober, he saw Poocha step forward from the crowd, clench his fists, stick out his chest, and yell "fuck you" at Lober. Poocha was within five feet of Lober at the time of the confrontation. When Ingram asked Lober if he could assist him in any way and whether everything was under control, "Ranger

---

1. It is worth flagging one evidentiary point in this regard: The officer to whom the hostile gestures were directed, Ranger Lober, did not testify that they occurred; the testimony came from a different officer. That the officer who was the object of the hostile gestures apparently did not see them would certainly undercut any physical threat theory and may be why the charges related only to the undisputed language, not to the hostile gestures.

Lober described to me that, no, things weren't in control. He had been trying to get Mr. Poocha to calm down and leave the scene without success." Lober moved toward Poocha to place him under arrest, but Poocha's girlfriend placed herself in between the two, preventing Lober from completing the arrest. These facts, I submit, in addition to those recited by the majority, are a sufficient basis from which a rational trier of fact could find that Poocha's language and expressive conduct, at that time and place, was likely to incite an immediate breach of the peace. *See City of Houston v. Hill,* 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).

Poocha's words—"fuck you"—plus his hostile and defiant expressive conduct—clenching his fists and sticking out his chest—amount to a direct challenge to the authority of the rangers in the immediacy of their facing a hostile crowd of 50—at a ratio of 12:1.[1] The line between a hostile crowd and a riotous mob is as thin as a razor's edge, and history teaches time and again that a minor incident, such as Poocha's confrontation, immediately following the officers' physically restraining another individual for interfering with their attempted arrest, can turn the tide. In spite of this evidence, the majority concludes that "there is no evidence . . . [of] an incitement to riot. In fact, the question is not even a close one." I disagree.

In so holding, the majority is essentially engaged in reweighing the evidence and making its own finding of the likelihood that Poocha's utterance and expressive conduct were not "likely to produce imminent lawless action." The majority misdirects its analysis in concentrating on the effect the language Poocha used was likely to have on the rangers. But both the regulation and the district court's finding, however, are directed at the effect the language was likely to have on the hostile and angry crowd. Thus, the majority's reliance on cases such as *Gulliford v. Pierce County,* 136 F.3d 1345 (9th Cir. 1998), and *Duran v. City of Douglas,* 904 F.2d 1372 (9th Cir.1990), is misplaced; neither case involved the likely effect of remarks critical of law enforcement which were directed at a hostile crowd gathered around an arrest scene.[2]

Because I believe that whether the words and expressive conduct Poocha used at the time and in the circumstances involved were likely to incite an immediate breach of the peace is a quintessential factual inquiry and that the district court's finding is adequately supported by the evidence, and because the majority, in its treatment of that question, has arrogated to itself the making of that finding, I respectfully dissent from that portion of the majority opinion.

---

1. The concurrence cites no authority for its assertion, with which I disagree, that "while a reference to 'speech' might include expressive conduct and thereby encompass gestures that could be interpreted as threatening [or inciting], 'language' does not." In fact, the regulation prohibits the use of "language, an utterance, or *gesture* . . . that is likely to . . . incite an immediate breach of the peace." 36 C.F.R. § 2.34(a)(2) (emphasis added). And while the information did not specifically charge use of a gesture, it is a part of the context in which the language used must be judged.

2. In insisting that Poocha's remarks were "directed at the officers, not at anyone else," and suggesting that the context in which they were made does not permit an inference that the remarks were directed at the hostile crowd as well, the concurrence, like the majority opinion, engages in its own fact finding in derogation of the reasonable inferences that can be drawn to support the verdict.