Susan **MUMMERT**, a married woman, Plaintiff–Appellee,

v.

**VENCOR INC.,** Defendant–Appellant,

and

**Jack Hood, a single man, Defendant.**

Susan Mummert, a married woman Plaintiff–Appellee/Cross–Appellant,

v.

Vencor Inc. Defendant–Appellant/Cross–Appellee,

and

**Jack Hood, a single man, Defendant.**

No. 99–16443, 99–16560.

D.C. No. CV–96–00533–RTT.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2001.

Decided Oct. 31, 2001.

---

Before POLITZ,* W. FLETCHER, and FISHER, Circuit Judges.

MEMORANDUM **

Susan Mummert was a staff pharmacist at Vencor, Inc.'s Tucson hospital from De-

cember 14, 1994 until her discharge on March 22, 1996. Mummert filed suit against Vencor, claiming that her termination violated the federal Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA") as well as various Arizona wrongful termination and civil rights laws. A district court jury concluded that Vencor had violated only the FMLA in discharging Mummert. The district court awarded Mummert actual and liquidated damages plus attorneys fees and costs pursuant to her FMLA claim. Both parties appealed. We affirm in all respects.

Several months before her termination, Mummert· complained to the Assistant Hospital Administrator, Kathy Osburn, of sexual harassment by Pharmacy Manager Jack Hood. In October and November, 1995, Osburn met with both Hood and Mummert to discuss Mummert's complaint, and Vencor conducted an investigation. Mummert was unsatisfied with Vencor's response and filed a charge of unlawful discrimination and retaliation with the Arizona Civil Rights Division. In response to Mummert's complaints of continued inappropriate treatment by Hood, in February, 1996 Hospital Administrator Linda Fiorentino decided to separate Hood and Mummert, and drew up a schedule with Hood working mornings and Mummert working afternoons. Both Hood and Mummert continued to receive full pay.

Hood resigned on March 11, 1996. The next day, Mummert and Joe Brasfield, another Vencor pharmacist, were given a posting for the Pharmacy Manager position. On March 19 Brasfield was interviewed and offered the position. Mum-

---

* Honorable Henry A. Politz, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

mert did not apply for the position until March 20; Fiorentino met with Mummert that day and told her Brasfield had gotten the job.

What happened next is hotly contested. The same day that Mummert learned Brasfield had been made Pharmacy Manager, Mummert and Fiorentino engaged in a dispute about Mummert's schedule, culminating in Fiorentino sending Mummert home until further notice. The next day, March 21, 1996, Mummert visited her regular physician. He found her to be distraught and put her on medical leave through April 3, 1996.

On March 21 and 22 Vencor attempted unsuccessfully to reach Mummert at home by telephone. Fiorentino then wrote Mummert a letter, dated March 22, 1996, terminating Mummert's employment with Vencor, effective noon, March 22, 1996. Vencor states that the reason for the termination was Mummert's insubordinate refusal to agree to work the hours Vencor needed her to work in the pharmacy. Vencor states that Fiorentino did not know Mummert had visited a doctor, did not know about the leave of absence advised by the doctor, and that the termination was in no way related to Mummert's complaints about Hood.

That same day, at 2:16 in the afternoon (Mountain Standard Time) on March 22, 1996, Mummert's lawyer faxed a letter to Vencor's corporate office in Louisville, Kentucky stating that Mummert's doctor had placed her on medical leave. Mummert did not communicate directly with the hospital personnel in Tucson. Vencor's corporate lawyer in Kentucky received Mummert's letter at 2:57 p.m. (M.S.T.) on March 22. Vencor's Tucson personnel assert that they did not learn about Mummert's medical leave letter until after Fiorentino mailed the termination letter to Mummert.

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). One way that a plaintiff can prove an interference claim is by showing "by a preponderance of the evidence that her taking of FMLA-protected leave constituted *a negative factor* in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1125 (9th Cir.2001)(emphasis added).

On appeal, Vencor challenges the district court's denial of its renewed motion for judgment as a matter of law; the correctness of the district court's jury instructions on the FMLA; and the district court's calculation of damages. On cross-appeal, Mummert challenges the district court's denial of her motion for a new trial on her state civil rights claims.

■ Vencor's first argument is that the district court should have granted its renewed motion for judgment as a matter of law. We cannot say that the jury's FMLA verdict is not supported by "substantial evidence." *See Poppell v. City of San Diego,* 149 F.3d 951, 962 (9th Cir.1998). Given the conflicting testimony and documentary evidence, the jury's decision that Vencor interfered with Mummert's FMLA rights by using her leave as a negative factor in its termination decision is not unreasonable and does not warrant reversal.

Vencor next argues that the district court abused its discretion by including in the FMLA jury instructions the phrase, "For example, an employer's termination of an employee during her FMLA leave violates the Act." Even if we were to hold

Vencor's challenge not waived, we would reject it. Vencor did not object to the instruction below. *See* Fed.R.Civ.P. 51. Vencor admitted at oral argument that it did not object to the instruction, but asserts that its proffered instruction preserved the issue. However, "mere submission of proposed instructions [does] not clearly show that the issue was focused before the court." *Grosvenor Properties Ltd. v. Southmark Corp.*, 896 F.2d 1149, 1153 (9th Cir.1990). Vencor does not point to any material in the record, nor do we find any, to support its argument that it preserved the issue for review.

■ Read in isolation, we agree that the contested statement does not correctly state the law. *See, e.g., Gunnell*, 152 F.3d at 1262. However, jury instructions are to be read as a whole. *See, e.g., Gulliford v. Pierce County*, 136 F.3d 1345, 1348 (9th Cir.1998). Because the statement was immediately preceded by and followed by sentences discussing the requirement of a causal connection between the taking of FMLA leave and the termination, we cannot say that the district court abused its discretion in formulating the jury instruction.

■ Vencor next argues that the district court's award of $44,736 in lost wages was improper because it was based on the difference between the wages Mummert would have earned had she remained employed by Vencor and the amount she earned from substitute employment until she found a better-paying job. Vencor argues that because it could have legally terminated her at the end of her leave, Mummert's damages should have been limited to the ten-day medical leave which she requested. Here, the jury could reasonably have concluded, based on the evidence, that Vencor terminated Mummert because she exercised her FMLA rights and that her unemployment was attributable to the FMLA violation. If so, the compensatory damages award was correct. As the district court observed, "Plaintiff's loss of wages and benefits was ongoing 'by reason of the violation' until she was able to find substitute work at the same rate of pay, regardless of the length of the underlying ordered leave."

Finally, Vencor argues that the magistrate's additional award of liquidated damages was improper because Vencor's termination of Mummert was objectively reasonable. The FMLA allows for liquidated damages where an employer's FMLA violation is not in good faith. *See* 29 U.S.C. § 2617(a)(1)(A)(iii). The district court found Vencor's failure to follow its own policy fatal to its claim of good faith, and we have no basis upon which to reverse that finding.

On cross-appeal, Mummert argues that the district court abused its discretion in denying her motion for a new trial on her state law claims. We cannot say that the district court erred in refusing to substitute its judgment for that of the jury where the parties presented sharply contradictory evidence at trial.

AFFIRMED.