302 Ga. 181
FINAL COPY

S17A1040. FREEMAN v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, David Justin Freeman was found guilty on one count of disorderly conduct pursuant to OCGA § 16-11-39 (a) (1). That statute provides in relevant part that

> [a] person commits the offense of disorderly conduct when such person . . . [a]cts in a violent or tumultuous manner toward another person whereby such person is placed in reasonable fear of the safety of such person's life, limb, or health.[1]

On appeal, Freeman contends that his conviction cannot stand because OCGA § 16-11-39 (a) (1) is unconstitutionally vague and overbroad.[2] For the reasons

---

[1] The State concedes that the conduct involved in this case was not "violent," but contends that the behavior was "tumultuous."

[2] Freeman was originally indicted for obstruction of a police officer and for disorderly conduct pursuant to a different statute, OCGA § 16-11-34 (a), which states that "[a] person who recklessly or knowingly commits any act which may reasonably be expected to prevent or disrupt a lawful meeting, gathering, or procession is guilty of a misdemeanor." However, Freeman raised in a motion to quash the indictment that the original accusation charging him

that follow, we reject Freeman's facial challenge to OCGA § 16-11-39 (a) (1) and conclude that Freeman's conviction in this case must be reversed, as the behavior for which Freeman was prosecuted falls outside of the applicable scope of the statute as properly construed.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial revealed that, on August 3, 2014, Freeman attended a church service at the Flowery Branch campus of 12 Stone Church, where at least 250 guests were in attendance. During a portion of the service, Pastor Jason Berry asked any teachers present to stand and be recognized so that the congregation

---

with disorderly conduct should have been dismissed because OCGA § 16-11-34 (a) was declared unconstitutional in 2006 by this Court. See State v. Fielden, 280 Ga. 444 (629 SE2d 252) (2006) (finding OCGA § 16-11-34 (a) to be unconstitutionally overbroad on its face and thus void). The State then amended the indictment to charge Freeman with disorderly conduct pursuant to OCGA § 16-11-39 (a) (1) rather than OCGA § 16-11-34 (a). The obstruction of an officer count against Freeman was nolle prossed, and the case proceeded to trial only on the disorderly conduct charge. Freeman's counsel argued that Freeman should have been granted a directed verdict of acquittal, as Freeman's actions constituted protected speech under the First Amendment to the United States Constitution and therefore could not constitute disorderly conduct under OCGA § 16-11-39 (a) (1). The trial court expressed its belief that Freeman's actions were not protected under the First Amendment and denied the motion for directed verdict. Freeman was thereafter found guilty of disorderly conduct. Freeman was sentenced to 12 months of probation and ordered to pay a $270 fine.

could pray for them to have a successful school year. About 50 people stood up, and Freeman, who was at the back of the church, stood up as well. When he stood up, Freeman raised his middle finger in the air and stared angrily at the pastor. The pastor testified that he felt afraid for his own safety at that time. Pastor Berry finished the prayer for the teachers and dismissed the room. As people were leaving, Freeman began yelling about sending children off to the evil public schools and having them raised by Satan. As Freeman yelled, the music minister at the church turned up the music in an effort to drown him out, and Freeman then left the sanctuary. Pastor Berry followed Freeman to speak with him in the front lobby of the church, where he told Freeman that he should have a conversation with Pastor Berry rather than shout in the middle of a church service. Freeman said that Pastor Berry should be ashamed of himself and that Freeman was going to leave, and then Freeman left the church with his family.

1. With respect to Freeman's claim that OCGA § 16-11-39 (a) (1) is unconstitutional on its face, "[a]s an appellate court, we have a duty to construe a statute in a manner which upholds it as constitutional, if that is possible." (Citation omitted.) <u>Cobb County School Dist. v. Barker</u>, 271 Ga. 35, 37 (1) (518

SE2d 126) (1999). With this principle in mind, we address Freeman's claims that OCGA § 16-11-39 (a) (1) is both unconstitutionally vague in violation of Due Process requirements and overbroad in violation of the First Amendment.

"A statute is unconstitutionally vague if it fails to give a person of ordinary intelligence notice of the conduct which is prohibited and encourages arbitrary and discriminatory enforcement. [Cit.]" Johnson v. State, 264 Ga. 590, 591 (1) (449 SE2d 94) (1994). In interpreting the language of OCGA § 16-11-39 (a) (1) to determine whether the statute is unconstitutionally vague, "we apply the fundamental rules of statutory construction that require us to construe [the] statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citations omitted.) Slakman v. Continental Cas. Co., 277 Ga. 189, 191 (587 SE2d 24) (2003).

Freeman contends, primarily, that because a person can be found guilty of disorderly conduct when he or she "[a]cts in a . . . tumultuous manner," and OCGA § 16-11-39 (a) (1) does not define the term "tumultuous," he or she is not sufficiently informed about what conduct is prohibited by the statute. However, "when the phrase challenged as vague has a commonly understood

meaning, then it is sufficiently definite to satisfy due process requirements." (Citation and punctuation omitted.) Bradford v. State, 285 Ga. 1, 3 (2) (673 SE2d 201) (2009). Here, at the time that the legislature enacted OCGA § 16-11-39 (a) (1) in 1995, "tumultuous" had the common meaning of being "disorderly, turbulent[, or] uproarious." The New Shorter Oxford English Dictionary (Vol. 2, 1993). See also Johnson, supra, 264 Ga. at 591 (1) (using standard dictionary definition of "contact" to demonstrate that stalking statute was not unconstitutionally vague). A person of common intelligence can ascertain from the word "tumultuous" that he or she may be found guilty of disorderly conduct under OCGA § 16-11-39 (a) (1) when that person acts in a disorderly, turbulent, or uproarious manner toward another person, which places the other person in reasonable fear for his or her safety. Johnson, supra. See also Rose v. Locke, 423 U. S. 48, 49-50 (96 SCt 243, 46 LE2d 185) (1975) ("[I]n most English words and phrases there lurk uncertainties. . . . All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden") (citation, punctuation and footnote omitted); Wilson v. State, 245 Ga. 49, 53 (262 SE2d 810) (1980) ("A criminal statute is sufficiently definite if its terms furnish a test based on normal

criteria which men of common intelligence who come in contact with the statute may use with reasonable safety in determining its command") (citation omitted). OCGA § 16-11-39 (a) (1) is not unconstitutionally vague due to its use of the term "tumultuous," as the statute provides sufficient notice to persons of ordinary intelligence of the prohibited conduct and does not encourage arbitrary and discriminatory enforcement.[3]

With regard to Freeman's challenge to OCGA § 16-11-39 (a) (1) as being unconstitutionally overbroad, "[a] statute that is clear about what it prohibits can nevertheless be unconstitutionally overbroad if it stifles expression or conduct that is otherwise protected by the Constitution." (Citation omitted.) State v. Fielden, 280 Ga. 444, 445 (629 SE2d 252) (2006). Indeed, "[i]f there is a

---

[3] To the extent that Freeman argues that the statute is unconstitutionally vague due to its use of the phrase "reasonable fear," such argument is without merit, as there is nothing vague about this commonly used expression that can be easily understood by persons of common intelligence. See Johnson, supra, 264 Ga. at 592 (2) (Georgia's stalking statute (OCGA § 16-5-90) is not unconstitutionally vague, as "a person of ordinary intelligence can readily appreciate what action, in a given context, will constitute 'harassing and intimidating' conduct on his part sufficient to provoke a 'reasonable fear of death or bodily harm' in another person"). See also, e.g., OCGA § 16-5-20 (simple assault committed where one "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury").

bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U. S. 397, 414 (IV) (109 SCt 2533, 105 LE2d 342) (1989). Accordingly, our "first task is to ascertain whether the statute reaches a substantial amount of constitutionally protected conduct. However, a statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction, and its deterrent effect on legitimate expression is both real and substantial." (Citations and punctuation omitted.) State v. Miller, 260 Ga. 669, 673 (2) (398 SE2d 547) (1990).

As explained more fully below, we find that, when properly construed, OCGA § 16-11-39 (a) (1) does not reach any, let alone a substantial amount of, constitutionally protected conduct. As mentioned previously, a person may only be found guilty of disorderly conduct under OCGA § 16-11-39 (a) (1) based on allegedly tumultuous conduct when he or she "[a]cts in a . . . tumultuous manner toward another person whereby such person is placed in reasonable fear of the safety of such person's life, limb, or health." The statute on its face contains no prohibition against any particular message being communicated, and it makes clear that the level of "tumultuous" behavior necessary to give rise to a

7

sustainable charge must involve *acts* that would place another person in reasonable fear for his or her safety. In this sense, it could be argued that the statute applies only to physical "acts" that do not implicate speech at all. State v. Cantwell, 66 Ore. App. 848, 850-852 (676 P2d 353) (1984) (Disorderly conduct statute criminalizing "fighting or . . . violent, tumultuous or threatening behavior" was not unconstitutionally overbroad, as the statutory language "describe[d] physical acts of aggression, not speech"). However, we believe that, because there are several tumultuous activities that could be used or interpreted as a form of free expression, the scope of OCGA § 16-11-39 (a) (1) must be considered with those possibilities in mind. In this regard, to the extent that there are tumultuous acts that would ostensibly support a disorderly conduct charge under OCGA § 16-11-39 (a) (1) and that could also constitute or involve an expressive act, the expression at issue would still have to be of the kind that would place a person in reasonable fear for his or her "life, limb, or health" before a defendant could be found guilty of disorderly conduct under OCGA § 16-11-39 (a) (1). As many other jurisdictions have consistently found, the type of expression that would give rise to such a reasonable fear would not be constitutionally protected; rather, it would have to involve "fighting words" or

a "true threat," which are the specific forms of expression that fall outside of the realm of constitutional protection and that could give rise to such reasonable fears. See Chaplinsky v. New Hampshire, 315 U. S. 568 (62 SCt 766, 86 LE 1031) (1942); Virginia v. Black, 538 U. S. 343 (III) (A) (123 SCt 1536, 155 LE2d 535) (2003). See also, e.g., Commonwealth v. Mastrangelo, 489 Pa. 254, 261 (414 A2d 54) (1980) (Pennsylvania disorderly conduct statute was constitutional, as the statute could "not be used to punish anyone exercising a protected First Amendment right," but could be used against a defendant who used fighting words); Carr v. Bradley, No. 2:07-cv-01053, 2009 U. S. Dist. LEXIS 27065 (II) (A) (S.D. Ohio Apr. 2, 2009) ("Ohio's disorderly conduct statute[ ] has been narrowly construed by the Ohio Supreme Court so as to maintain its constitutionality. For speech to be the basis for a disorderly conduct charge, the speech must amount to 'fighting words' as that term is used in First Amendment jurisprudence"); Nolan v. Krajcik, 384 FSupp.2d 447 (III) (C) (1) (D. Mass. 2005) (statute criminalizing "idle and disorderly conduct" narrowly construed to apply to unprotected "fighting words" rather than constitutionally protected speech). We agree that a narrow interpretation of OCGA § 16-11-39 (a) (1) such as the one that has been adopted in other jurisdictions is appropriate

here. Accordingly, we conclude that OCGA § 16-11-39 (a) (1) is not unconstitutionally overbroad, because "the statute only can reach conduct which involves no lawful exercise of a First Amendment right." (Citation and punctuation omitted.) Nolan, supra, 384 FSupp.2d at 459 (III) (C) (1). Specifically, as applied to expressive conduct, the statute *only* reaches expressive conduct that amounts to "fighting words" or a "true threat."

2. Because there was no showing here that Freeman's act of silently raising his middle finger from the back of the church during the church service constituted "fighting words" or a "true threat" that would amount to a tumultuous act, his conviction for disorderly conduct under OCGA § 16-11-39 (a) (1) cannot stand. Freeman was specifically charged

> with the offense of DISORDERLY CONDUCT for the said accused person, on or about the 3rd day of August, 2014, did act in a . . . tumultuous manner toward Jason Berry whereby said victim was placed in reasonable fear of the safety of said person's life, limb or health by screaming, shouting[4] *or using obscene gestures*.

(Emphasis supplied.) The alleged obscene gesture in this case was the raising

---

[4] It is undisputed that none of the screaming and shouting was directed toward Pastor Berry, as the evidence reveals that Freeman only began screaming and shouting at no one in particular as the congregants were leaving the sanctuary after the church service had ended.

of Freeman's middle finger from the back of the church. However, a raised

middle finger, by itself, does not, without more, amount to fighting words or a

true threat. As explained by the Supreme Judicial Court of Massachusetts:

> We recognize that the raising of the middle finger as a form of insult has a long, if not illustrious, history dating back to ancient Greece. See Robbins, Digitus Impudicus: The Middle Finger and the Law, 41 U.C. Davis L. Rev. 1403, 1413 (2008). Like its verbal counterpart, when it is used to express contempt, anger, or protest, *it is a form of expression protected by the First Amendment*. See, e.g., Sandul v. Larion, 119 F3d 1250, 1255 (6th Cir. 1997) (passenger yelling "f [_ _]k you" and extending middle finger while passing group of protestors entitled to First Amendment protection); Duran v. [City of] Douglas, 904 F2d 1372, 1374, 1378 (9th Cir. 1990) ("obscene gesture" and profanities directed to police, while "[i]narticulate and crude," "represented an expression of disapproval toward a police officer" that "fell squarely within the protective umbrella of the First Amendment").
>
> But, in certain limited circumstances, when accompanied by other less expressive and more threatening conduct, raising the middle finger may constitute fighting words or a true threat. Compare United States v. Poocha, 259 F3d 1077, 1082 (9th Cir. 2001) (clenching fists and yelling "f[_ _]k you" to police officer not fighting words), and Cook v. County Comm'rs of Wyandotte County, 966 F. Supp. 1049, 1051, 1052 (D. Kan. 1997) (raising middle finger at police officer parked in patrol car not fighting words), with Gower v. Vercler, 377 F3d 661, 664, 670 (7th Cir. 2004) (repeatedly yelling "f[_ _]k you" and insults, and attempting to humiliate, constitutes fighting words where parties had brandished weapons at each other previous night), and State v. Groves, 219 Neb. 382, 384, 386 (363 NW2d 507) (1985) (calling police officer "motherf[_ _]ker" and challenging him to make arrest alone after learning that officer had called for assistance were

fighting words).

(Footnote omitted; emphasis supplied.) O'Brien v. Borowski, 461 Mass. 415, 428-429 (3) (961 NE2d 547) (2012).

Here, Freeman raised his middle finger as a form of protest, and there is no evidence that Freeman engaged in additional threatening conduct that would have elevated his raised middle finger to the level of conveying "fighting words" or a "true threat." The evidence reveals that he stared angrily at Pastor Berry and did nothing more while he raised his middle finger in silence from the back of the church. This would not rise to the level of "fighting words" or a "true threat" as a matter of law. See Poocha, supra, 259 F3d at 1082 (clenching fists and yelling "f[_ _]k you" to police officer not fighting words). And, because Freeman's actions did not amount to such fighting words or a true threat, the pastor could not have been placed in "reasonable fear of the safety of [his] life, limb, or health" consistent with the parameters of OCGA § 16-11-39 (a) (1). Accordingly, Freeman's raised middle finger constituted a constitutionally protected expression, and he could not be found guilty of disorderly conduct under OCGA § 16-11-39 (a) (1) based on having made the gesture in the manner that he did. The evidence was insufficient to support

Freeman's conviction under OCGA § 16-11-39 (a) (1), and, because of this, his conviction must be reversed and he cannot be re-tried on the disorderly conduct charge. Priest v. State, 265 Ga. 399 (1) (456 SE2d 503) (1995).

Judgment reversed. Hines, C. J., Benham, Hunstein, Nahmias, Blackwell, Boggs, Grant, JJ., and Judge Mack Crawford concur. Peterson, J., not participating.

Decided October 2, 2017.

OCGA § 16-11-39 (a) (1); constitutional question. Hall State Court. Before Judge Baldwin.

D. Justin Freeman, pro se.

Stephanie D. Woodard, Solicitor-General, Daniel Sanmiguel, Assistant Solicitor-General; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.