NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.



SUPREME COURT OF GEORGIA
Case No. S24A0591

October 31, 2024

## NIKEMA WILLIAMS, CONGRESSWOMAN et al. v. COLIN POWELL et al.

Upon consideration, the deadline for a motion for reconsideration in this case has been revised. It is ordered that a motion for reconsideration, if any, must be filed no later than **4:30 pm on Wednesday, November 6, 2024**.

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____, Clerk

In the Supreme Court of Georgia

Decided: October 31, 2024

S24A0591. WILLIAMS et al. v. POWELL et al.

ELLINGTON, Justice.

After being arrested and charged with violating OCGA § 16-11-34.1, which criminalizes conduct that is likely to disrupt meetings and other official business of the General Assembly and its members and employees, the appellants in this case brought suit seeking declaratory and injunctive relief that would prevent any enforcement of that Code section.[1] The appellants allege that the Code section is overbroad and violates the free-speech protections of

---

[1] The appellants are Nikema Williams, Park Cannon, Devin Barrington-Ward, Richard Bathrick, Shannon Cofrin Gaggero, Raymond "Ben" Harris, Mary Hooks, Priscilla Smith, Desmond Tucker, Yomara Velez, and April Zachary.

the Georgia Constitution and is unconstitutionally vague.[2] Along with their facial challenges, the appellants allege that the Code section is unconstitutionally overbroad and vague as applied to them. The trial court granted the appellees' motion to dismiss the appellants' facial challenges, their motion to dismiss the as-applied

---

[2] During the course of the litigation, the appellants limited their constitutional challenges to subsections (a), (f), and (g) of OCGA § 16.11.34.1. OCGA § 16-11-34.1 provides in pertinent part:

(a) It shall be unlawful for any person recklessly or knowingly to commit any act which may reasonably be expected to prevent or disrupt a session or meeting of the Senate or House of Representatives, a joint session thereof, or any meeting of any standing or interim committee, commission, or caucus of members thereof.
***

(f) It shall be unlawful for any person willfully and knowingly to enter or to remain in any room, chamber, office, or hallway within the state capitol building or any building housing committee offices, committee rooms, or offices of members, officials, or employees of the General Assembly or either house thereof with intent to disrupt the orderly conduct of official business or to utter loud, threatening, or abusive language or engage in any disorderly or disruptive conduct in such buildings or areas.

(g) It shall be unlawful for any person to parade, demonstrate, or picket within the state capitol building or any building housing committee offices, committee rooms, or offices of members, officials, or employees of the General Assembly or either house thereof with intent to disrupt the orderly conduct of official business or to utter loud, threatening, or abusive language or engage in any disorderly or disruptive conduct in such buildings or areas.

2

challenge of one of the appellants, and their motion to deny the appellants' motion for a permanent injunction.[3] For the reasons explained below, we conclude that the allegations of the complaint are insufficient to support a declaration that OCGA § 16-11-34.1 is facially unconstitutionally overbroad or vague under Georgia law. We also conclude that the allegations of the complaint required the dismissal of one appellant's as-applied challenge. Consequently, we affirm.

According to the complaint, the appellants were each "charged with a single count of 'preventing or disrupting General Assembly sessions or other meetings of members,' in violation of OCGA § 16-11-34.1." Most of the appellants were arrested in November 2018 during a political protest in the rotunda of the State Capitol, during which some of those who were arrested made speeches or chanted

---

[3] From the record, it appears that the remaining appellants' as-applied challenges remain unresolved. But even without a final judgment, the appellants were entitled to an immediate appeal under OCGA § 5-6-34 (a) (4), because the trial court's order refused the appellants' application for a permanent injunction.

slogans. The appellants allege that none of the protesters "used any noise making or amplifying devices" and that "[t]he Georgia House of Representatives was in session at the time of the arrests, but their work was not disrupted in any way, either before or during the arrests." The appellants allege that the charges against those who were arrested in November 2018 were later dismissed, not as the result of any "compromise or plea negotiation." The complaint alleges that one of the appellants, State Representative Park Cannon, was arrested in March 2021 after she knocked on one of the doors to the governor's office in an effort "to get information directly from the [g]overnor's [o]ffice regarding when [a recently passed bill[4]] was going to be signed and become the law of the State of Georgia." The appellants allege that "Cannon did not intend to disrupt, and did not disrupt, any session of the [l]egislature or any other official business[,]" and that "[n]either the Georgia House, nor the Georgia

---

[4] The General Assembly designated the bill, SB 202, the "Election Integrity Act of 2021," and it comprehensively revised the Elections Code. See Ga. L. 2021, p. 14, § 1 (Act 9)

Senate, were in [s]ession at the time [Cannon] was detained, so they could not have been disturbed."

The complaint names as defendants multiple law enforcement officers in their personal capacities.[5] The appellants allege that the officers personally arrested one or more of them or made decisions for the Department of Public Safety regarding the enforcement of OCGA § 16-11-34.1. The appellants are seeking declaratory and injunctive relief on the basis that the Code section is unconstitutionally overbroad and violates the free speech protections in Georgia's Constitution.[6] In the complaint, the appellants allege that "OCGA § 16-11-34.1 is facially

---

[5] The appellees are defendants-below Darrius Magee, James Womble, Joseph Goble, Justin Golden, Kevin Hawkins, Kyle McClendon, Chris C. Wright, William W. Hitchens, III, Thornell L. King, G. D. Langford, and Cory Seymour. The complaint also named Colin Powell, James Wicker, Javen Roberson, Jeffrey Rogers, Jeremiah Slay, and Matthew Ray as defendants, but the record does not show service of process on those defendants.

[6] In addition to Georgia's freedom of speech provision, Ga. Const. of 1983, Art. I, Sec. I, Par. V ("No law shall be passed to curtail or restrain the freedom of speech. Every person may speak, write, and publish sentiments on all subjects but shall be responsible for the abuse of that liberty."), the appellants cite to Ga. Const. of 1983, Art. I, Section I, Pars. II, VII, IX, and XIII.

5

unconstitutional for the same reasons that the virtually identical statute regarding disruption of other government meetings[, OCGA § 16-11-34,[7]] was declared unconstitutional in *State v. Fielden*, 280 Ga. 444 (629 SE2d 252) (2006)[,]" under "the overbreadth doctrine." The appellants allege that "[t]he only difference between the two provisions is the type of meetings covered." The appellants allege that the Code section is also unconstitutional as applied to them because they did not intend to disrupt any session of the General Assembly and did not in fact disrupt any session. The appellants also allege that OCGA § 16-11-34.1 is unconstitutionally vague "as its terms fail to give fair warning to a citizen as to what conduct is permitted and insufficient guidance to law enforcement as to what

---

[7] OCGA § 16-11-34 (a) provides: "A person who recklessly or knowingly commits any act which may reasonably be expected to prevent or disrupt a lawful meeting, gathering, or procession is guilty of a misdemeanor." Specifically, the appellants argued that we struck down OCGA § 16-11-34 as facially overbroad because it criminalized "recklessly or knowingly committing any act which may reasonably be expected to prevent or disrupt" specified classes of meetings and that OCGA § 16-11-34.1 (a) is likewise facially overbroad because it employs the same text.

6

conduct is criminal." The appellants filed a corresponding motion for a permanent injunction barring enforcement of the Code section.

The appellees filed a motion to dismiss the complaint in part, distinguishing *Fielden* and arguing that OCGA § 16-11-34.1 is not facially unconstitutional, despite any textual similarities to OCGA § 16-11-34. The appellees also argued that OCGA § 16-11-34.1 is not unconstitutionally vague and that Cannon failed to state an as-applied claim for violation of her right to free speech because the allegations of the complaint do not "plausibly show that that [she] engaged in any protected expression in connection with her arrest" for knocking on a door to the governor's office. . After a hearing, the trial court rejected the facial challenges of all of the appellants and rejected Cannon's as-applied challenge and granted the motion to dismiss the complaint in part. The trial court denied as moot the appellants' motion for injunctive relief "which sought injunctive relief based on [the appellants'] facial challenge to [OCGA] § 16-11-34.1."

1. The appellants contend that OCGA § 16-11-34.1 (a) is

7

unconstitutionally overbroad under Georgia law and that the trial

court therefore erred in granting in part the appellees' motion to

dismiss and in denying the appellants' request for injunctive relief.

Specifically, the appellants argue that OCGA § 16-11-34.1 (a) is

"virtually identical" to OCGA § 16-11-34 and is facially

unconstitutional for the same reasons as that Code section was

declared unconstitutional in *Fielden*. Assuming without deciding

that an overbreadth challenge is properly brought under the Georgia

Constitution's free speech provisions,[8] like the trial court, we

---

[8] As discussed below, *Fielden* applied the federal overbreadth doctrine articulated by the United States Supreme Court in *Broadrick v. Oklahoma*, 413 U.S. 601 (93 SCt 2908, 37 LE2d 830) (1973). Given that the appellants challenge OCGA § 16-11-34.1 (a) only under Georgia's constitutional free speech protections, some of us question whether the guarantee of free speech, first adopted in the Georgia Constitution in 1861, is properly interpreted to include an equivalent to the federal law overbreadth doctrine outlined in *Broadrick* in 1973. As in *Fielden*, litigants who have invoked the Georgia Constitution's free speech protections in challenging a criminal statute as unconstitutionally overbroad have typically also invoked the First Amendment. See, e.g., *Rodriguez v. State*, 284 Ga. 803 (671 SE2d 497) (2009); *McKenzie v. State*, 279 Ga. 265 (626 SE2d 77) (2005); *State v. Brannan*, 267 Ga. 315 (477 SE2d 575) (1996); *Cunningham v. State*, 260 Ga. 827 (400 SE2d 916) (1991); *State v. Miller*, 260 Ga. 669, 671 (1) (398 SE2d 547) (1990). In reviewing trial court judgments in such cases, we have not yet explicated any differences between the federal overbreadth doctrine and the standard under the Georgia Constitution – beyond a conclusory statement that Georgia's Constitution is even more protective against overbreadth than the First

conclude that *Fielden* does not require facial invalidation of OCGA

§ 16-11-34.1 (a) for overbreadth.[9]

> Duly enacted statutes enjoy a presumption of constitutionality. A trial court must uphold a statute unless the party seeking to nullify it shows that it manifestly infringes upon a constitutional provision or

---

Amendment. See *Fielden*, 280 Ga. at 445 ("The 1983 Constitution of Georgia provides even broader protection" than the federal doctrine of overbreadth "where a statute infringes upon behavior protected by the First Amendment."); *Statesboro Publishing Co. v. City of Sylvania*, 271 Ga. 92, 95 (2) (516 SE2d 296) (1999) ("Our state constitution provides even broader protection of speech than the first amendment." (citation omitted); *Miller*, 260 Ga. at 671 (1) ("The 1983 Constitution of Georgia provides even broader protection" than the First Amendment, which is "a broad umbrella that shelters all political points of view and shields a wide range of avenues for expression, including symbolic speech"); cf. *Chamblee Visuals, LLC v. City of Chamblee*, 270 Ga. 33, 34 (2) (506 SE2d 113) (1998) ("When construing the Georgia free speech clause, this Court applies analogous First Amendment standards in the absence of controlling state precedent." (citing *Paramount Pictures Corp. v. Busbee*, 250 Ga. 252, 255 (1), n.5 (297 SE2d 250) (1982)). Although we may wonder whether and to what extent the federal overbreadth doctrine under the First Amendment is the correct analytical framework for resolving a claim that a statute is facially overbroad under the Georgia Constitution's free speech protections, in this case we review the appellants' claims as they presented them to the trial court and thus leave that question for another day.

[9] In the alternative, the appellants argue, for the first time on appeal, that the State failed to show that OCGA § 16-11-34.1 (a) is the least restrictive means of furthering the government's interest, a standard that we have held applies to a limited class of overbreadth challenges under the Georgia Constitution to content-neutral regulations that may affect protected speech. See, e.g., *Statesboro Publishing*, 271 Ga. at 95 (2). We do not address this theory, because the appellants did not make this argument before the trial court and did not obtain a ruling for us to review. See *Abushmais v. Erby*, 282 Ga. 619, 622 (2) (652 SE2d 549) (2007).

violates the rights of the people. The constitutionality of a statute presents a question of law. Accordingly, we review a trial court's holding regarding the constitutionality of a statute de novo.

*Rhodes v. State*, 283 Ga. 361, 362 (659 SE2d 370) (2008) (punctuation and footnotes omitted).

The statute we declared to be unconstitutionally overbroad and thus void in *Fielden*, OCGA § 16-11-34 (a), provides: "A person who recklessly or knowingly commits any act which may reasonably be expected to prevent or disrupt a lawful meeting, gathering, or procession is guilty of a misdemeanor." See *Scott v. State*, 299 Ga. 568, 570 (1) (788 SE2d 468) (2016) ("To assess the extent of a statute's effect on protected expression, a court must determine what the statute actually covers. Accordingly, the first step in any overbreadth analysis is to construe the statute in question."). We concluded that OCGA § 16-11-34 (a) describes the prohibited conduct with sufficient clarity to warn a person of the scope of the statute's application and that the statute is not susceptible to arbitrary and discriminatory enforcement. See *Fielden*, 280 Ga. at

10

444-445. Consequently, we held that, contrary to the trial court's ruling, OCGA § 16-11-34 (a) is not unconstitutionally vague. Id. at 445.

We then considered the appellees' overbreadth challenge. We explained that

> [a] statute that is clear about what it prohibits can nevertheless be unconstitutionally overbroad if it stifles expression or conduct that is otherwise protected by the Constitution. The doctrine of overbreadth is particularly applicable where a statute infringes upon behavior protected by the First Amendment.

*Fielden*, 280 Ga. at 445 (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 611-612 (93 SCt 2908, 37 LE2d 830) (1973)). We further explained that conduct that has "some communicative element . . . may be regulated by the government only if the regulation furthers a substantial governmental interest that is unrelated to the suppression of free expression; and the incidental restriction on First Amendment freedom is no greater than necessary to further the governmental interest." Id. (citation and punctuation omitted). Furthermore, we explained that where expressive conduct is

11

regulated, a statute is unconstitutionally overbroad only if the overbreadth is both "real" and "substantial[,] . . . judged in relation to the statute's plainly legitimate sweep." Id. at 447 (citing *Broadrick*, 413 U.S. at 615). See also *Scott*, 299 Ga. at 577 (3) ("Invalidation for overbreadth is strong medicine that is not to be casually employed." (citation and punctuation omitted)).

In *Fielden*, we concluded that "the literal language" of OCGA § 16-11-34 (a) criminalizes

> [a]ny recklessly or knowingly committed act that could reasonably be expected to prevent or disrupt [any] lawful meeting, gathering or procession . . . , regardless where it is committed, how trivial the act, its impact, or the intent of the actor other than the intent to commit the act itself.

*Fielden*, 280 Ga. at 447. We reasoned that, with this scope, the Code section "reaches conduct that is at once innocent and protected by the guarantees of free speech, thereby affecting and chilling constitutionally protected activity." Id. We concluded that OCGA § 16-11-34 (a) "significantly impacts constitutionally permitted conduct without the requisite narrow specificity" and that the Code section's overbreadth is "both real and substantial[,]" judged in

relation to the statute's plainly legitimate sweep. Id. at 447. Because OCGA § 16-11-34 (a) has such a broad scope, and because it is not susceptible to a limiting construction capable of removing the threat to or deterrence of constitutionally protected expression,[10] we held that it is unconstitutionally overbroad and void. Id. at 447-448.

Turning to the Code section at issue in this case, OCGA § 16-11-34.1 (a) provides:

> It shall be unlawful for any person recklessly or knowingly to commit any act which may reasonably be expected to prevent or disrupt a session or meeting of the Senate or House of Representatives, a joint session thereof, or any meeting of any standing or interim committee, commission, or caucus of members thereof.

The trial court determined that OCGA § 16-11-34.1 (a) "has a far narrower scope" than OCGA § 16-11-34 (a), and that "the extent to which it may be expected to deter any protected speech is thus also

---

[10] See *Fielden*, 280 Ga. at 448 ("This Court may construe statutes to avoid absurd results and has the authority to narrow a statute to avoid unconstitutional infirmities. However, under our system of separation of powers this Court does not have the authority to rewrite statutes. . . . Curing the overbreadth in OCGA § 16-11-34 (a) would be less a matter of reasonable judicial construction than a matter of substantial legislative revision." (citations omitted)).

far narrower than" with OCGA § 16-11-34 (a). The trial court determined that the appellants have not shown that OCGA § 16-11-34.1 "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep of prohibiting conduct likely to prevent or disrupt legislative business." The trial court concluded that "*Fielden* does not, accordingly, require facial invalidation of [OCGA] § 16-11-34.1 (a)."

We agree with the trial court that *Fielden* does not require facial invalidation of OCGA § 16-11-34.1 (a), despite both statutes' using the phrase "recklessly or knowingly commit[] any act which may reasonably be expected to prevent or disrupt . . . ." Contrary to the appellants' contention, the textual difference between OCGA § 16-11-34 (a) and OCGA § 16-11-34.1 (a) – the type of meetings that they cover – is a meaningful difference. By applying literally to any lawful gathering, whether governmental or private sector, professional or social, private or open to the public, OCGA § 16-11-34 (a) threatens nearly infinite iterations of protected expression. OCGA § 16-11-34.1 (a), by contrast, regulates expression only in the

context of sessions and various types of meetings of the members of the Georgia General Assembly, a discrete group, comprised of 236 elected officials during their terms of service. The trial court correctly ruled that *Fielden* does not require facial invalidation of OCGA § 16-11-34.1 (a) as unconstitutionally overbroad, because OCGA § 16-11-34.1 (a) is far more narrowly tailored than OCGA § 16-11-34 (a) and any infringement of protected expression cannot be deemed "substantial," relative its legitimate sweep.

2. The appellants contend that subsections (f) and (g) of OCGA § 16-11-34.1 "chill[] large swaths of constitutionally protected speech" and are unconstitutionally overbroad, because "there is no limitation in scope requiring the activities either cause the untimely termination of the lawful meeting or substantially impair the conduct of the lawful meeting[,]" citing *Fielden*, 280 Ga. at 448. The appellants argue even "'abusive' speech is often constitutionally protected," citing *Freeman v. State*, 302 Ga. 181 (805 SE2d 845) (2017), *Gooding v. Wilson*, 405 U.S. 518 (92 SCt 1103, 31 LE2d 408)

15

(1972), and *Merenda v. Tabor*, 506 Fed. App'x 862 (11th Cir. 2013).[11]

The appellants contend that OCGA 16-11-34.1 (f) and (g) "are overbroad in ways similar to laws that have been struck down by" this Court and the United States Supreme Court, citing *McKenzie v. State*, 279 Ga. 265 (626 SE2d 77) (2005); *Cunningham v. State*, 260 Ga. 827 (400 SE2d 916) (1991); and *Gooding*, 405 U.S. at 520.[12] .

---

[11] In *Freeman*, we held that OCGA § 16-11-39 (a), defining disorderly conduct as acting "in a violent or tumultuous manner toward another person whereby such person is placed in reasonable fear of the safety of such person's life, limb, or health," is "not unconstitutionally overbroad, because the statute only can reach conduct which involves no lawful exercise of a First Amendment right. Specifically, as applied to expressive conduct, the statute only reaches expressive conduct that amounts to 'fighting words' or a 'true threat.'" *Freeman*, 302 Ga. at 185 (1) (citation and punctuation omitted). In *Gooding*, the United States Supreme Court held that, because Georgia appellate decisions had applied former Code Ann. § 26-6303, defining disorderly conduct as using "opprobrious words or abusive language tending to cause a breach of the peace," to utterances where there was no likelihood that the person addressed would make an immediate violent response, it was clear that the Code section had not been limited to "fighting words" and was unconstitutionally overbroad. *Gooding*, 405 U.S. at 528. In *Merenda*, in considering in an action under 42 U.S.C. § 1983 whether an officer had probable cause to arrest the defendant for calling the officer "a f*cking a**hole," the Eleventh Circuit Court of Appeals noted that Georgia has "tailored its disorderly conduct statute[, OCGA § 16-11-39 (a),] to punish only unprotected fighting words." *Merenda*, 506 Fed. App'x 862, 865 (11th Cir. 2013).

[12] In *McKenzie*, we held that OCGA § 46-5-21 (a) (1), which prohibits "obscene, lewd, lascivious, filthy, or indecent" telephone calls, is an overbroad infringement on the First Amendment's guarantee of freedom of speech,

16

OCGA § 16-11-34.1 (f) makes it a crime

for any person willfully and knowingly to enter or to remain in any room, chamber, office, or hallway within the state capitol building or any building housing committee offices, committee rooms, or offices of members, officials, or employees of the General Assembly or either house thereof with intent to disrupt the orderly conduct of official business or to utter loud, threatening, or abusive language or engage in any disorderly or disruptive conduct in such buildings or areas.

In very similar terms, OCGA § 16-11-34.1 (g) makes it a crime "to parade, demonstrate, or picket" in those same places with intent to disrupt the orderly conduct of official business.

---

because the Code section does not employ the least restrictive means in directly regulating the content of speech to further a compelling state interest, as with regulations that apply only to obscene speech, speech directed at minors, speech intended to harass, or speech not welcomed by the listener, but instead also applies to speech that is merely indecent, heard by adults, welcomed by the listener, and spoken with intent to please or amuse. *McKenzie*, 279 Ga. at 267. *McKenzie* is not controlling here, given that OCGA § 16-11-34.1 (f) and (g) are content-neutral in their impact on protected expression. In *Cunningham*, we held OCGA § 40-1-4, which prohibits bumper stickers containing profane or lewd words describing sexual acts, excretory functions, or parts of the human body, reaches a substantial amount of constitutionally protected speech and is unconstitutionally overbroad, in part because, read literally, it criminalizes "the display of a bumper sticker bearing any profanity in combination with words referring to any part of the human body" and in part because "the face to face confrontation necessary to trigger the exception allowing regulation of 'fighting words' would be unlikely." *Cunningham*, 260 Ga. at 831 (1), 832 (2). *Cunningham* likewise does not apply to the content-neutral regulations at issue here.

"When interpreting a statute, we must give the text its plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable way." *State v. Harris*, __ Ga. __, __ (Case No. S24A0623, decided September 4, 2024) (citation and punctuation omitted). "If the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." *Major v. State*, 301 Ga. 147, 150 (1) (800 SE2d 348) (2017) (citation and punctuation omitted). In the context of OCGA § 16-11-34.1 as a whole, subsections (f) and (g) are not ambiguous. They prohibit (1) willfully and knowingly entering or remaining in designated areas that are involved with the operation of the General Assembly with intent to disrupt the orderly conduct of official business; (2) parading, demonstrating, or picketing in those areas with intent to disrupt the orderly conduct of official business; (3) and making loud or abusive utterances or engaging in disorderly conduct in those areas. Construed according to their plain and unambiguous terms, these provisions do not prohibit a substantial amount of protected speech

18

relative to their plainly legitimate sweep of prohibiting conduct likely to prevent or disrupt legislative business, as discussed in Division 1, supra, and *Fielden*, therefore, does not require facial invalidation of OCGA § 16-11-34.1 (f) and (g) as unconstitutionally overbroad.

3. The appellants contend that OCGA § 16-11-34.1 (a) is "unconstitutionally vague, under the Georgia Constitution, as its terms fail to give fair warning to a citizen as to what conduct is permitted and insufficient guidance to law enforcement as to what conduct is criminal." They argue that the phrase "any act which may reasonably be expected to prevent or disrupt" fails to provide sufficient clarity on what conduct is illegal and will subject a person to arrest. And they argue that "what is considered 'reckless' or 'knowing' is determined by the subjectivity of the arresting officer, leaving citizens all the more vulnerable to arrest."

For a statute to withstand a challenge that it is "unconstitutionally vague under Article I, Section I, Paragraph I, of the Georgia Constitution of 1983, it must convey sufficiently definite

19

warning as to the proscribed conduct when measured by common understanding, and provide explicit standards to those who enforce the law in order to prevent arbitrary enforcement." *Banta v. State*, 281 Ga. 615, 616 (1) (642 SE2d 51) (2007).[13] See also *Poole v. State*, 262 Ga. 718, 719 (425 SE2d 655) (1993) ("The due process clauses of our state and federal constitutions require that an individual be informed as to what actions a governmental authority prohibits with such clarity that he is not forced to speculate at the meaning of the law." (citation and punctuation omitted)); *Mixon v. State*, 226 Ga. 869, 870 (178 SE2d 189) (1970) (When a statute is attacked as being so vague, uncertain and indefinite as to be incapable of enforcement in a criminal proceeding, in violation of the due process protection of the Georgia Constitution, the applicable standard is whether the statute "fail[s] to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute."). "The prohibition against excessive vagueness does not invalidate every

---

[13] See Ga. Const. of 1983, Art. I, Sec. I, Par. III ("No person shall be deprived of life, liberty, or property except by due process of law.").

statute which a reviewing court believes could have been drafted with greater precision." *Lindsey v. State*, 277 Ga. 772, 773 (1) (596 SE2d 140) (2004) (citation and punctuation omitted). Furthermore, "the fact that application of the statute's standards sometimes requires an assessment of the surrounding circumstances to determine if the statute is violated does not render it unconstitutional." *Banta*, 281 Ga. at 617 (1) (citations and punctuation omitted).

> The uncertainty in a statute which will amount to a denial of due process of law is not the difficulty of ascertaining whether close cases fall within or without the prohibition of the statute, but whether the standard established by the statute is so uncertain that it cannot be determined with reasonable definiteness that any particular act is disapproved[.]

*Mixon,* 226 Ga. at 870 (1) (citation and punctuation omitted). See also *Freeman,* 302 Ga. at 183 (1) (In interpreting the language of a criminal statute, "to determine whether the statute is unconstitutionally vague, we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary

21

meaning, and to avoid a construction that makes some language mere surplusage." (citation and punctuation omitted)).

The appellants have not shown that, taking the allegations of the complaint as true, OCGA § 16-11-34.1 (a) fails to put a person of ordinary intelligence on notice of the conduct that is prohibited. The phrase "any act which may reasonably be expected to prevent or disrupt" sessions of the General Assembly or meetings of its members adequately describes the prohibited conduct in terms of its objectively likely effect. And, although the terms "recklessly" and "knowingly" are used in the alternative and describe different states of mind, both terms are used throughout the Criminal Code, sometimes together,[14] and are found in common usage.[15] For the

---

[14] See, e.g., OCGA §§ 16-5-45; 16-11-101.1.

[15] See *Major*, 301 Ga. at 151 (1) (""[A] reckless mindset requires a person to consciously act in a manner which they know could cause harm. . . . [R]ecklessness clearly requires an analysis of the accused's state of mind at the time of the crime alleged."); *Philpot v. State*, 268 Ga. 168, 171 (3) (486 SE2d 158) (1997) ("[K]nowingly" is "not in any sense technical or [a] word[] of art, the meaning of which would not be understood by people of ordinary experience and understanding. On the contrary, . . . [it is an] ordinary term[] found in common usage and understood by people of common and ordinary experience." (citation and punctuation omitted)).

foregoing reasons, OCGA § 16-11-34.1 (a) is not so vague as to violate the due process clause of the Georgia Constitution, and the trial court did not err in dismissing the appellants' facial vagueness challenge. See *In re D. H.*, 283 Ga. 556, 557 (2) (663 SE2d 139) (2008) (holding that a statute making it unlawful for any person to disrupt or interfere with the operation of any public school contains words of ordinary meaning that give constitutionally sufficient notice as to the statute's application); *Fielden*, 280 Ga. at 444-445.

4. The appellants contend that subsections (f) and (g) of OCGA § 16-11-34.1 are unconstitutionally vague. They argue that "[t]he fundamental problem is that both subsections broadly purport to make it a crime 'to utter loud, threatening, *or* abusive language *or* engage in any disorderly *or* disruptive conduct'" in the state capitol building or certain designated places connected with the official business of the General Assembly. Through the repeated use of "or," they argue, these provisions provide officers no guidance at all about what conduct could be disruptive under OCGA § 16-11-34.1 (f) and (g) and "give an impermissible level of discretionary authority to

23

make determinations about what conduct could be disruptive under [OCGA] § 16-11-34.1 (f) and (g) and to enforce the law — through criminal arrests — in an arbitrary and potentially discriminatory manner." They also argue that loud volume of speech alone, "without additional disruptive conduct, is not a sufficient reason to arrest a person for their speech, especially where, as here, there are no standards to determine what speech is loud enough to be criminal and no requirement that anything be disrupted[,]" citing *Thelen v. State*, 272 Ga. 81, 82 (526 SE2d 60) (2000).[16]

As referenced in Division 3, to satisfy due process requirements, a criminal statute must be sufficiently definite to give a person of ordinary intelligence fair notice of what conduct is

---

[16] In that case, we held that,

> [b]y prohibiting "any unnecessary or unusual sound or noise which annoys others," the ordinance [at issue failed] to provide the requisite clear notice and sufficiently definite warning of the conduct that is prohibited. . . . Whether the noise of a helicopter takeoff or landing is unnecessary, unusual, or annoying to a neighbor more than 50 feet away certainly depends upon the ear of the listener. A statute is unconstitutionally vague when the standard of conduct it specifies is dependent upon the individualized sensitivity of each complainant.

*Thelen*, 272 Ga. at 82-83 (citations and punctuation omitted)).

24

forbidden and to provide standards that prevent arbitrary enforcement. See *Poole*, 262 Ga. at 719; *Banta*, 281 Ga. at 616-617 (1); *Lindsey*, 277 Ga. at 773 (1); *Mixon*, 226 Ga. at 870.

As discussed in Division 2, supra, the most natural reading of subsections (f) and (g), viewed in the context of OCGA § 16-11-34.1 as a whole, is that these provisions prohibit (1) willfully and knowingly entering or remaining in designated areas that are involved with the operation of the General Assembly with intent to disrupt the orderly conduct of official business; (2) parading, demonstrating, or picketing in those areas with intent to disrupt the orderly conduct of official business; (3) and making loud or abusive utterances or engaging in disorderly conduct in those areas. Construed in this way, any person of ordinary intelligence can be expected to understand what language and conduct to avoid while still freely engaging in protected speech or expressive conduct. See *Freeman*, 302 Ga. at 183-184 (1) (holding that OCGA § 16-11-39 (a) (1), which criminalizes acting "in a violent or tumultuous manner toward another person whereby such person is placed in reasonable

25

fear of the safety of such person's life, limb, or health" provides sufficient notice to persons of ordinary intelligence of the prohibited conduct and does not encourage arbitrary and discriminatory enforcement and, therefore, is not unconstitutionally vague); *Fielden*, 280 Ga. at 444-445 (holding that OCGA § 16-11-34 (a) is not unconstitutionally vague). The appellants have not shown that OCGA § 16-11-34.1 (f) or (g) are susceptible of discriminatory enforcement simply because they provide several alternative ways of violating their provisions or because they do not require proof of an actual disruption resulting in the untimely termination or substantial impairment of the conduct of a lawful meeting. For the foregoing reasons, OCGA § 16-11-34.1 (f) and (g) are not so vague as to violate the due process clause of the Georgia Constitution, and the trial court did not err in dismissing the appellants' facial vagueness challenge. See *Poole*, 262 Ga. at 719; *Banta*, 281 Ga. at 616-617 (1); *Lindsey*, 277 Ga. at 773 (1); *Mixon*, 226 Ga. at 870.

5. The appellants contend that the trial court erred in dismissing Cannon's as-applied claim for a violation of her right to

free speech under the Georgia Constitution, which was based on the trial court's determination that the allegations of the complaint "do not plausibly show" that "Cannon was engaged in any protected expression in connection with her arrest." The appellants argue that in the context of this case Cannon's act of knocking on a door to the governor's office was "inherently expressive" and was protected under the Georgia Constitution.

We do not reach the merits of Cannon's as-applied claim, however, because the complaint does not allege that Cannon engaged in any conduct that is prohibited by OCGA § 16-11-34.1.[17] In the complaint, the appellants allege that, before Cannon was arrested in March 2021, she had knocked on one of the doors to the governor's office, seeking information regarding when the governor was going to sign a particular bill. The appellants further allege that, because neither the Georgia House nor the Georgia Senate were in session at the time Cannon was detained, they could not

---

[17] The record does not reflect any disposition of the charges against Cannon.

have been disturbed and, therefore, her knocking could not reasonably have been expected to prevent or disrupt a legislative session or a meeting of members of the General Assembly in violation of OCGA § 16-11-34.1 (a). The appellants do not allege that Cannon was occupying, parading, demonstrating, or picketing in any of the spaces designated in OCGA § 16-11-34.1 (f) or (g), where the official business of the General Assembly is conducted. The appellants also do not allege the Cannon knocked on the door with the intent to disrupt the orderly conduct of official business, as specified for a violation of those provisions. To the contrary, the appellants specifically allege that Cannon did *not* intend to disrupt any official business of the General Assembly. Regardless if any other statute might prohibit the conduct for which the complaint alleges that Cannon was arrested, the Code section at issue in this case, OCGA § 16-11-34.1, does not prohibit the conduct alleged in the complaint. Therefore, Cannon's as-applied challenge to the Code

28

section fails.[18] See *Major*, 301 Ga. at 152 (3) ("An as-applied challenge addresses whether a statute is unconstitutional on the facts of a particular case or to a particular party." (citation and punctuation omitted)); *Hertz v. Bennett*, 294 Ga. 62, 67-68 (2) (c) (751 SE2d 90) (2013) (determining that the statute at issue regulated the petitioner's conduct and reviewing on the merits an as-applied challenge to the statute).

*Judgment affirmed. All the Justices concur.*

---

[18] We express no opinion about the merits of the as-applied challenges of the rest of the appellants, which, as referenced previously, appear to remain unresolved by the trial court.

PETERSON, Presiding Justice, concurring.

I concur fully in the Court's opinion affirming the trial court's rejection of the appellants' state constitutional challenge to a Georgia statute regulating conduct at the Georgia State Capitol and related locations. The appellants are limited on appeal to only those arguments that they chose to make below, and they cannot succeed on those arguments. But the State should not confuse this limited victory with a clean bill of health for the statute. The statute is seriously flawed. Those charged with its enforcement should take care to avoid those flaws, and the General Assembly should seriously consider revising it.

1. *The statute is seriously flawed.*

I fully concur in the Court's decision today that OCGA § 16-11-34.1 does not criminalize *so much* protected speech and expressive conduct relative to its constitutionally permissible applications that it must be struck down as overbroad under *State v. Fielden*, 280 Ga. 444 (629 SE2d 252) (2006). But it is nevertheless pretty clear to me that the statute *does* include within its sweep a material amount of

speech and expressive conduct protected by clearly established First Amendment caselaw, and perhaps also the Georgia Constitution. Like the statute at issue in *Fielden*, OCGA § 16-11-34.1 (a) on its face prohibits speech or expressive conduct without any requirement that the speaker or actor (1) intend to disrupt any official business, or (2) actually disrupt the conduct of official business. And a person may be prosecuted even where they had not been asked to leave a meeting and refused.[19]

The absence of such guardrails is particularly problematic given the nature of the locations covered by the statute, both in their significance and their potential breadth. The statute's principal focus is on conduct at the Georgia State Capitol, the primary home of two of the three branches of Georgia state government and a center of free speech. See *Chabad-Lubavitch of Georgia v. Miller*, 5

---

[19] As *Fielden* noted, the absence of such elements causes our statute to differ from similar statutes of other states. See 280 Ga. at 446-447 (discussing Tenn. Code Ann. § 39-17-306, which criminalizes an act that "substantially obstructs or interferes with [a lawful] meeting, procession, or gathering" with "the intent to prevent or disrupt"); see also N.C. Gen. Stat. § 143-318.17 ("A person who willfully interrupts, disturbs, or disrupts an official meeting and who, upon being directed to leave the meeting by the presiding officer, willfully refuses to leave the meeting is guilty of a Class 2 misdemeanor.")

F3d 1383, 1388 (11th Cir. 1993) (en banc) (describing the rotunda of the Georgia State Capitol as "a public forum located in a core government building"). The Capitol is a busy (and noisy) place, home to debates on many of the most contentious issues of the day. It hosts a range of visitors who may lack knowledge of the building's layout, schedule, and conventions. At the same time, the statute covers a wide-ranging scope of meetings far from the Capitol, as legislative study committees meet throughout the state. And it also reaches meetings of "caucus[es] of members," some of which are public and clearly defined, such as the majority and minority caucuses, while others may be less obvious to outsiders.[20]

By not requiring disruptive intent or actual disruption in a statute aimed at government meetings in general and at a

---

[20] Caucuses mentioned in House or Senate resolutions the last several years include the Georgia Legislative Black Caucus, Georgia Legislative Women's Caucus, Georgia Legislative Sportsman Caucus, Working Families Caucus, Senate American Korean Friendship Caucus, Taiwan Caucus, and Landmark [the condominiums on Atlanta's Piedmont Avenue, not the visible objects that help one find one's way] Caucus of the Georgia House of Representatives. The level of formal existence of caucuses also may vary. Some caucuses have been created formally by the adoption of a resolution. See, e.g., SR 1014 (creating Mountain Caucus of the Georgia State Senate) (adopted 2012).

frequently visited government building in particular, the statute potentially subjects a host of activity to prosecution. Some of that activity may not involve core protected speech but still would be considered innocent in nature by most people, such as a visiting group of school children causing noise outside of a legislative meeting, or an audible cell phone ringer or persistent coughing during a meeting. But it also may include core political speech that might be considered disruptive merely by virtue of its volume, tone, or content. Similar problems also infect subsections (f) and (g) of OCGA § 16-11-34.1.

These problems will remain until the General Assembly corrects subsections (a), (f), and (g).[21] And until such amendments occur, law enforcement charged with the security of the covered locations and the people within them will be in a very difficult

---

[21] To be clear, I do not suggest any specific amendment. First, in my view that would intrude on the separate constitutional role of the General Assembly. And second, we have not had briefing or argument on the constitutionality of any future amendment, and it would not be proper to prejudge such a question. It is enough to note the absent terms that *Fielden* found significant, and to stop at that.

position with respect to enforcement decisions under these flawed statutes. These statutes can be enforced in a constitutional manner on a lot of occasions, which is why the Court's decision today is correct. But the statutes also extend beyond those permissible occasions, and Georgia owes it to law enforcement — and the People seeking to exercise their constitutional rights — to correct that.

2.     *Overbreadth may not be a cognizable claim under the Georgia Constitution.*

My main point in writing is to ensure that the State doesn't misinterpret the Court's decision. But it's also important that the appellants don't misinterpret this concurrence: it's not a roadmap for a future overbreadth lawsuit under the Georgia Constitution. I am skeptical that Georgia courts have the power to entertain such claims.

The federal overbreadth doctrine has both a substantive First Amendment component and a standing component. That standing component operates as a doctrine permitting plaintiffs to assert the claims of others in federal court. As such, it's not a doctrine that the

34

Supremacy Clause requires state courts to apply even for First Amendment claims. See *Virginia v. Hicks*, 539 U.S. 113, 120 (123 SCt 2191, 156 LE2d 148) (2003) ("[O]ur standing rules limit only the *federal* courts' jurisdiction over certain claims. . . . Whether Virginia's courts should have *entertained* this overbreadth challenge is entirely a matter of state law." (emphasis in original)). And if we're not required to apply overbreadth standing even to First Amendment claims, we certainly aren't required to apply such a relaxed standing doctrine to claims arising under the Georgia Constitution unless Georgia's law of standing permits it.

I readily acknowledge that this Court has applied overbreadth doctrine to federal and state constitutional claims. See, e.g., *West v. State*, 300 Ga. 39, 40-41 (793 SE2d 57) (2016); *Fielden*, 280 Ga. at 445; *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays, Inc.*, 266 Ga. 393, 402 (5) (467 SE2d 875) (1996); *Cunningham v. State*, 260 Ga. 827, 831-832 (2) (400 SE2d 916) (1991); *State v. Miller*, 260 Ga. 669, 673-674 (2) (398 SE2d 547) (1990). We appear to have imported this doctrine uncritically from federal case law

35

without consideration of the text, history, and context of the Georgia Constitution. See *Breaux v. State*, 230 Ga. 506, 507-508 (1) (197 SE2d 695) (1973). As the appellants have acknowledged here, "[p]rior decisions of this Court have not fully explained why the federal rule of overbreadth standing has historically applied equally to the jurisdiction of Georgia courts and to free speech violations of the Georgia Constitution in light of [*Hicks*]." But as this Court has explained in detail, "we should not simply recite holdings of the United States Supreme Court . . . and uncritically import them into our interpretation of" the Georgia Constitution. *Elliott v. State*, 305 Ga. 179, 188 (II) (C) (824 SE2d 265) (2019). And the power of Georgia courts to decide cases is determined independently of federal standing doctrine. See *Sons of Confederate Veterans v. Henry County Bd. of Comm'rs*, 315 Ga. 39, 45 (2) (a) (880 SE2d 168) (2022) ("*SCV*").

Georgia's law of standing has long had a requirement that a plaintiff generally is limited to assertions of a violation of his or her own legal rights. See, e.g., *SCV*, 315 Ga. at 50 (2) (b) (to have standing, "a party must have some right at stake that requires

36

adjudication to protect it"); *Mitchell v. Ga. & Ala. Ry. Co.*, 111 Ga. 760, 771 (2) (36 SE 971) (1900) (A Georgia plaintiff "can not sue for . . . the person who has the legal right of action but the action should be brought in the name of the real plaintiff."). This general principle seems inconsistent with a federal standing doctrine that enables plaintiffs to assert a claim based on the violation of someone else's legal rights.

And this general principle looks more like a bright-line rule when the case involves a constitutional challenge to a state statute. See, e.g., *Cobb County v. Floam*, 319 Ga. 89, 92 (1) (901 SE2d 512) (2024) (it is "well settled that a court 'will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has, therefore, no interest in defeating it.'") (quoting *Reid v. Mayor, etc. of Eatonton*, 80 Ga. 755, 757 (6 SE 602) (1888) (citation and punctuation omitted)); *SCV*, 315 Ga. at 54 (2) (c) n.13 (citing cases); *Tennille v. State*, 279 Ga. 884, 885 (1) (622 SE2d 346) (2005) ("A party has standing to challenge the constitutionality of a statute if the statute adversely impacts that party's rights.")

37

(quoting *Agan v. State*, 272 Ga. 540, 542 (1) (533 SE2d 60) (2000));

*Plumb v. Christie*, 103 Ga. 686, 692 (30 SE 759) (1898) ("Before a law can be attacked by any citizen on the ground of its unconstitutionality, he must show that its enforcement is an infringement upon his rights of person or property.").[22] Indeed, one case applying this rule articulated it as applying to all cases except First Amendment overbreadth claims. See *Lambeth v. State*, 257 Ga. 15, 16 (354 SE2d 144) (1987) (stating that "except where First Amendment rights are involved, a party has standing to challenge the constitutionality of a statute only insofar as it has an adverse

---

[22] For that matter, older caselaw articulates an even stronger rule that would seem to exclude facial challenges altogether:

> The courts will never blot out of existence a great police and moral enactment on the ground that parts of it are attacked as unconstitutional, in a general onslaught upon it all. On the contrary, they will preserve it all, if possible, giving the benefit of doubts to the co-ordinate branches of government, even when a legitimate case of individual suffering in person or property is brought before them; and will never decide laws unconstitutional, if cases can be otherwise adjudicated. They will always wait until the law is attempted to be put in operation, and then act against the officer who executes or attempts to execute it, and not against the law-making branch of government in the general scope of its power.

*Scoville v. Calhoun*, 76 Ga. 263, 269 (1886).

impact on his own rights," and citing for this proposition a case citing only federal overbreadth caselaw (citation and punctuation omitted)).[23] This longstanding rule seems wholly incompatible with a doctrine permitting parties to assert a claim based on the violation of someone else's legal rights. The appellants argue that the Georgia Constitution's speech protections are broader than the First Amendment and so necessarily include overbreadth. But whether or not the Georgia Constitution protects more speech than the First Amendment is a question wholly separate from the scope of the judicial power the Georgia Constitution grants Georgia courts to

---

[23] At least one case applying this rule after the adoption of the 1983 Constitution was a bit confused about what counts as a "right." See *Ambles v. State*, 259 Ga. 406, 406-407 (1) (383 SE2d 555) (1989) (holding that the State had standing to assert a federal equal protection challenge to state witness competency statutes, because the State "has both the duty and the right to protect the security of its citizens by prosecuting crime"). This seems wrong; the State generally has powers, not rights, and in any event is not a "person" under the Fourteenth Amendment. See *Kelly v. State*, 315 Ga. 444, 448-451 (3) (883 SE2d 363) (2023) (rejecting State's argument that initial order granting defendant's motion for new trial must be vacated because it was "null and void for failure to comply with due process and fundamental fairness"; "erroneous premise" that State was a "person" under the 14th Amendment's Due Process Clause "is fatal to the State's claims"). But this outlier case does not distract from the clear rule.

decide claims brought under the Georgia Constitution's speech provisions.

If, as it seems to me likely, the judicial power conferred by the Georgia Constitution does not permit a party to assert a claim based on the violation of someone else's legal rights, then the Georgia Constitution likely would not include an overbreadth doctrine. There may be good policy reasons for certain relaxations on standing limits. But it is not within the judicial power to disregard limitations on that power just because we think it would be good policy.

I am authorized to state that Chief Justice Boggs, Justice Warren, Justice Bethel, Justice McMillian, and Justice Colvin join in this concurrence.